STATE of Missouri,
Plaintiff-Respondent,

v.

Leonard D. RALLS, Defendant-Appellant.

No. KCD 30305.

Missouri Court of Appeals,
Western District.

June 11, 1979.

Clifford A. Cohen, Kevin Locke, Gary L. Gardner, Kansas City, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Steven D. Steinhilber, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

Defendant Ralls after a jury trial was convicted of stealing from the person (§ 560.156, RSMo 1969 and § 560.161, RSMo 1975). As a Second Offender he was sentenced to six years' imprisonment by the Division of Corrections, and has appealed to this court. We reverse and remand for a new trial, for reasons hereafter explained.

The facts disclosed by the evidence are as follows:

On September 3, 1976, a warm, sunny day, witness Doris Smith, 65, had just come out of the Skaggs store at the Metro Plaza, a shopping center, at about 11:00 a. m., when a man passed her from the left rear, hooked her purse which she was carrying on her left arm, and fled with it. The man was black, according to her description, about 19 years old, weighing 150 pounds, and was five feet nine inches tall. He was wearing dark red trousers, a red, white and blue printed shirt, and a brown cap. She cried out for help and pursued the man until he disappeared, about a quarter of a block away, into the Citadel apartment complex. The purse, Mrs. Smith said, contained $52 represented by two $20 bills, one $10 bill and two $1 bills.

She was conducted to the office of the manager of the apartment complex to call the police, but learned that the police had already been called. In fact, a policeman, Officer White, arrived almost at once. She was giving him her report of the purse-snatching, and a description of the thief, when a message came over the car radio that a suspect was in custody at a point about two blocks away. (The failure to furnish us the exhibits referred to by the witness has placed us at a disadvantage in locating the various points and routes.)

The witness rode with the police officer to the place where defendant was in custody. He was standing by another police car at the side of the street, handcuffed. There were three officers close by. Officer White either stopped his car momentarily or slowed down almost to a stop. The witness immediately identified the defendant as being the culprit, although he had on no shirt or cap.

Testimony of police officers established that an officer in a helicopter over the area, upon receiving the report of the theft, had seen the defendant running and slowing down to a walk in the vicinity of the arrest. The defendant had on no shirt. The helicopter officer alerted officers on the ground, who accosted the defendant and placed him under arrest. Defendant was sweating profusely and was breathing heavily. He had on his person $52, in two $20 bills, one $10 bill, and two $1 bills.

Searching the surrounding area, the police found on a patio a sweat-dampened shirt and a hat, identified as having been worn by the thief. On the second floor of the same complex—on a balcony, according

to the suppression hearing testimony—they found the stolen purse.

By way of defense, the defendant's mother testified that she had sent defendant, who lived with her, to the grocery store at the Metro Plaza at about 11 o'clock that morning, with $10 to buy some groceries. He was wearing no shirt, and owned no shirt such as the one worn by the thief. He walked and ran with a limp because one leg was shorter than the other. She explained that he breathed heavily after walking because of a bullet wound to his lung received two years earlier.

*Identification of defendant.*

Witness Smith on the trial was asked if she could identify the man who had stolen her purse. "This is the man right here," she answered. Thereupon defendant objected to the in-court identification and moved to suppress the same. The motion was denied, and the ruling is assigned as error.

If I have correctly traced defendant's argument, it is this: The witness in her testimony in a pre-trial suppression hearing had testified she did not positively identify defendant when she saw him in police custody, only that in build, size, color of trousers and racial characteristics he resembled the thief; that if she had testified to a positive "facial" identification on the suppression hearing (as she did at the trial), then the judge (a different judge from the one trying the case) would have sustained the motion to suppress as indicated by his comments in overruling the motion; and that, since the witness now on the trial positively identified the defendant as the purse snatcher, the trial court should reopen and sustain the motion to suppress. We do not agree with defendant about the tenor and effect of witness Smith's suppression hearing testimony, or about the meaning of the judge's comments in overruling the motion. We do not need to go into them, however, for if we granted the validity of both propositions, his conclusion would not necessarily follow that the in-court identification should be suppressed.

We believe that the trial court ruled correctly in denying defendant's motion to suppress the witness's in-court identification. Combining all of her testimony relating to identification, both in the suppression hearing and in the trial, looking at the "totality of circumstances", as we must, there was not such a "very substantial likelihood of irreparable misidentification", *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *State v. Bivens*, 558 S.W.2d 296 (Mo.App.1977), as to justify suppressing the witness's identification testimony and removing it from the jury's consideration. True it is that the witness did not have an opportunity fully to view the thief's face, but she did have ample opportunity to see his retreating figure. Within a short time, perhaps as short as eight minutes, she viewed him in police custody. The time lapse between the time of the crime and the time the suspect is viewed by the eyewitness is a factor to be considered in assaying identification testimony . .; the shorter the time, the more reliable the identification. *Neil v. Biggers, supra; State v. Hudson*, 508 S.W.2d 707, 710 (Mo. App.1974). The procedure here used by the police, i. e., allowing the witness to see the suspect by himself in custody at the scene of the crime or at the scene of the arrest, is an approved procedure. *State v. White*, 549 S.W.2d 914, 918 (Mo.App.1977). It does not vitiate the identification unless the evidence shows that the witness made the identification as a response to the suggestion or encouragement of the police, rather than on his own observation and visual recollection of the defendant's appearance. *State v. French*, 528 S.W.2d 170, 173 (Mo.App.1975). There was nothing of such undue suggestion in the procedure here.

As for the inconsistencies in the trial and prior testimony of the witness, they were brought out on cross-examination and were for the jury to evaluate. The jury was competent to deal with the issue. *State v. Bivens*, 558 S.W.2d at 298, 299. *Manson v. Brathwaite, supra* 432 U.S. at 116, 97 S.Ct. 2243.

*Refusal to declare mistrial upon the receipt of inadmissible evidence.*

Defendant next complains of the court's failure to declare a requested mistrial when police officer Wolfe testified that witness Smith identified defendant as the culprit when she saw him in custody. This testimony, by one other than the identifying witness himself, is condemned by *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972). The court did sustain an objection to the testimony and instructed the jury not to consider the same, but refused a mistrial. We will assume the court's denial of a mistrial was within an allowable discretion, but need not decide the same in view of our ruling upon the next point.

*Refusal to declare mistrial for argument of excluded evidence.*

Then during argument, the prosecutor argued to the jury the same testimony. Once again defendant objected, reminding the court of his earlier ruling on the evidence, and asked for a mistrial. The court denied the mistrial, but sustained the objection and directed the jury to disregard the argument of the prosecutor on that subject. The court's denial of a mistrial on this occasion is said to be prejudicial error.

■ Mistrial, of course, is a drastic remedy. *State v. Raspberry*, 452 S.W.2d 169, 173 (Mo.1970); *State v. Csolak*, 571 S.W.2d 118, 125 (Mo.App.1978). The trial court is quite properly reluctant to abort a trial. Appellate reversal is yet a more drastic remedy. But here the prosecutor in argument boldly repeated testimony which the court had specifically ruled out and had instructed the jury to disregard. The evidence ruling had come after some discussion at the bench. It could not have been easily forgotten. If the court's action was sufficient in sustaining the objection to the testimony and instructing the jury to disregard it, we do not think it was sufficient when the same evidence was then recited in argument. We have here the added impact of a repetition of the improper evidence, aggravated by prosecutorial misconduct.

The improper evidence, upon which the improper argument was based, was not merely cumulative. Evidence is cumulative when the fact is "fully and properly proved by other testimony", so as to take it out of the area of serious dispute. On that point, see the concurring opinion of Finch, C. J., in *Degraffenreid*, at 66. That was not quite the case here, for the identification by witness Smith was sharply challenged and she was the only identification witness.

We believe the defendant's complaint is well taken, and for that reason we reverse and remand for a new trial.

*Allowing argument, otherwise improper, in retaliation.*

■ Defendant's final complaint is that the prosecutor was permitted to argue to the jury that they could assume that the testimony of five other persons, who were members of the same household as defendant, but who were not called by defendant to testify that he did not own such a shirt as was worn by the thief, would have been unfavorable to the defendant. Defendant's mother, with whom defendant lived, had testified to the fact defendant did not own such a shirt, and also that three other of her children, ages 7–18 years of age, and two "grandbabies", ages 10 and 13, lived with her. Defendant's criticism of the prosecutor's argument is that the witnesses were no more available to defendant than to the state, and that the testimony of the five would have been cumulative. *State v. Wallach*, 389 S.W.2d 7, 13 (Mo.1965); *State v. Collins*, 350 Mo. 291, 165 S.W.2d 647 (1942); *State v. Davis*, 504 S.W.2d 221, 225 (Mo. App.1973). However that may be, the prosecutor's argument had been invited by defendant when he had argued to the jury: "Now, who else would know that he doesn't own a shirt like that? If I could find other witnesses, sure, I'd bring them to you. But I can't. But who else do you have?" It was within the court's discretion to permit this type of retaliatory argument. *State v. Treadway*, 558 S.W.2d 646, 650 (Mo. banc 1977); *State v. Whiteaker*, 499 S.W.2d 412, 419 (Mo.1973); *State v. Swenson*, 551

S.W.2d 917, 920 (Mo.App.1977); *State v. Lacy*, 548 S.W.2d 251, 253–4 (Mo.App.1977).

The judgment is reversed and the cause is remanded for a new trial.

All concur.