STATE of Missouri, Plaintiff-Respondent,

v.

John JOHNSON, Jr., Defendant-Appellant.

No. WD 31791.

Missouri Court of Appeals, Western District.

May 26, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 23, 1981.
Application to Transfer Denied Sept. 8, 1981.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, Catheryn B. Starke, Asst. Atty. Gen., Kansas City, for plaintiff-respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

DIXON, Judge.

Defendant appeals four year concurrent sentences for Burglary Second Degree and Stealing resulting from a bench trial. The single issue presented is the admissibility of in-court and out-of-court identifications of defendant. Defendant argues that the identifications were the product of impermissibly suggestive police procedures and that they were also unreliable.

A janitor at the Midwest Eye Consultant Corporation, Michael Kenney, observed a person in the inner office of a doctor-tenant. Suspecting the person was there improperly, the janitor retreated into a hallway to await the intruder's departure. A man emerged shortly looked directly at the janitor for a few seconds, and turned to leave the building. The janitor followed him, asking questions about his presence there. The janitor walked behind and beside the intruder for at least forty or fifty yards. The intruder glanced at the janitor several times while responding to questions, and at other times, the janitor saw the intruder's profile. The janitor estimated he had a frontal view of the intruder's face for a total of ten to fifteen seconds. The lights were on in the hallway.

Midwest Eye Consultant Corporation is at 6700 Troost Avenue, Kansas City, Missouri. The intruder left by a rear door, walked around the building, and continued northward on Troost. The police were called, and an officer responded. The witness described the intruder as over six feet tall and about two hundred pounds, wearing a coat, gloves, green stocking cap and carrying a brown or black briefcase. The officer broadcast the description to other officers in the area, and then he and the witness left in the squad car to look for the intruder.

Police, converging on the area, spotted a man fitting the description near a gas station about two blocks north of the medical office. A gas station attendant testified that a black man wearing a cap and carrying a briefcase approached him and offered to sell him a camera. When the attendant refused, the man ran to the rear of the gas station. Police officers witnessed this vignette and gave chase. They arrested defendant Johnson behind a nearby house. The janitor was present at the arrest and identified defendant as the intruder. The next morning the janitor-witness picked defendant out of a three-man lineup.

Police searched the restroom at the rear of the gas station. They found a brown briefcase standing against one wall and a 35 mm. camera concealed in the wastebasket.

It was stipulated that the camera belonged to Midwest Eye Consultant Corporation.

Defendant testified he had come from the Landing Shopping Center and was arrested at the corner of 65th and Troost while waiting for a bus.

■ Defendant argues it was impermissibly suggestive for police to permit the witness to identify defendant at the scene of the arrest. Defendant compares this to showing a witness a single photograph and argues that in so doing, the police are implicitly telling the witness that this suspect is guilty.

This court has already rejected that argument:

[A]llowing the witness to see the suspect by himself in custody at the scene of the crime or at the scene of the arrest, is an approved procedure.... It does not vitiate the identification unless the evidence shows that the witness made the identification as a response to the suggestions or encouragement of the police, rather than on his own observation and visual recollection of the defendant's appearance.

*State v. Ralls,* 583 S.W.2d 289, 291 (Mo.App. 1979), citing *State v. White,* 549 S.W.2d 914, 918 (Mo.App.1977), and *State v. French,* 528 S.W.2d 170 (Mo.App.1975). In *White,* the court let stand an identification made moments after a robbery as the defendant sat handcuffed in a police car, and in *French,* defendant was identified by the victims after being returned to the scene of the crime.

In the instant case, the evidence does not show that police encouraged or prompted the witness to identify the defendant at the time of arrest. The witness was apparently acting on the basis of "his own observation and visual recollection of the defendant's appearance." *Ralls, supra* at 291.

Concerning the lineup the following morning, defendant asserts it compounded the suggestiveness asserted to be present at the arrest. The police acted properly in allowing identification upon arrest; any argument which assumes this to be suggestive is seriously undermined. Defendant does not argue that any specific procedure employed during the lineup was suggestive, nor would the record support such a contention.

Defendant further argues that the identifications were unreliable, asserting that the suggestiveness undermined reliability. No suggestiveness appears, but in any event the necessary reliability is present.

■ Five factors are relevant in assessing the reliability of identification testimony. *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *State v. Higgins,* 592 S.W.2d 151, 160 (Mo.1979), appeal dismissed, *Higgins v. Missouri,* 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980). As recently restated by the Missouri Supreme Court, those five factors are:

(1) The opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

*State of Missouri v. Charles,* 612 S.W.2d 778 (Mo. banc 1981).

1. The witness had ample opportunity to view the intruder in a lighted hallway while they traversed a space of forty to fifty yards.

2. The witness was very attentive while with the intruder because of his suspicion.

3. The witness described the intruder's height, weight, clothing, and briefcase in accurate detail.

4. The witness exhibited a high level of certainty each time he confronted and identified the defendant.

5. The length of time between the crime and the confrontation was brief. The shorter the time, the greater the reliability, because details are fresh in the witness's mind. *State v. Ralls, supra.*

Based on these five factors, the identification of defendant bears every indication of reliability.

The judgments of conviction are affirmed.

All concur.