**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Tommie W. OVERSTREET,
Defendant-Appellant.**

No. 48523.

Missouri Court of Appeals,
Eastern District,
Division One.

May 20, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
July 12, 1985.

Timothy J. Walk, Clayton, for defendant-appellant.

Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

This appeal involves a jury conviction for the offenses of stealing and robbery in the second degree. Defendant contends that the trial court erred in overruling his motions for suppression of items seized from the suspect car and of identification. We affirm the trial court's rulings.

## FACTS

On August 21, 1983, Linda Muse left the bar at the Henry the VIII Motel and entered her car at 12:15 a.m. Previously, Ms. Muse had two drinks at the Sheraton Inn and one drink at the Henry VIII bar. At approximately 3:45 a.m. while resting in her car, two men ordered her out of the car and took her purse. The two men removed her to a dark part of the parking lot where she was thrown face down on the back end of a car. She remained at that location for a half an hour as the men continued to throw her up against the car and succeeded in partially disrobing her. During this time, a third man appeared across the parking lot, by a recreational vehicle, a short distance from her. The third man tried to open the passenger and driver side of this vehicle. The defendant, who wore glasses and had two able arms, kept going back and forth from the recreational vehicle to Ms. Muse. After a while, two of the men went away and returned with a car. The third man entered and they left.

About ten to fifteen minutes later, Ms. Muse described to a police officer the three men who had accosted her. All three were black. One was fortyish, had a double chin and an arm in a sling. The other two were in their thirties, one with a left mechanical arm and the other had glasses and two able arms. She gave height and weight descriptions of the suspects, as well as clothing worn. She described the vehicle they drove as a large dark green Ford. Another witness could not describe the occupants, but told the police the car had an Illinois license plate and with license plate numbers SZYK or ZYK432.

The officer put out a dispatch which Officer Barrow received. Officer Barrow positioned himself on I–70 and approximately 30 minutes later stopped an east bound vehicle matching the description. The vehicle was a Ford Galaxy '72, black over green, with Illinois license plate number ZXY432, occupied by three black males. Officer Barrow called for back-ups and upon their arrival, ordered the vehicle occupants out of the car and onto the ground. One man had an arm in a sling, another an artificial arm and the third wore glasses and had two able arms. The suspects were handcuffed.

The first officer advised Ms. Muse that the police had stopped a vehicle matching the description on his dispatch. He transported her to the scene on the highway and told her he would have the suspects come back to the vehicle for her identification. Each suspect was ordered to stand in front of the light. Ms. Muse was asked if she could identify the men. She identified them with certainty. The suspects were then arrested.

Officer Barrow testified that at some point the trunk of the vehicle was opened and someone removed articles from the trunk. He saw purses inside the car. Lt. Hoff, also at the scene, found a burgundy purse on the floorboard of the car, which Ms. Muse identified as hers.

## SUPPRESSION OF EVIDENCE

■ Before the defendant can object to a warrantless search and seizure in violation of the Fourth Amendment, he must establish that he has a legitimate expectation of privacy in the areas searched or things seized. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *State v. McCrary,* 621 S.W.2d 266, 272 (Mo. banc 1981). The defendant has the burden of showing not only that the search was illegal, but also that he had a legitimate expectation of privacy in the automobile searched or the articles seized. *State v. Morris,* 662 S.W.2d 884, 893 (Mo.App.1983).

To establish a legitimate expectation of privacy, the defendant must have both an actual, subjective expectation of privacy, and this privacy expectation must be "reasonable" or "legitimate," measured by concepts of real or personal property law or to understandings recognized and permitted by society. *State v. McCrary*, 621 S.W.2d at 272–73.

The defendant made no claim that he had either an actual, subjective expectation of privacy in the automobile that was searched or that his expectation of privacy was legitimate. The defendant did not claim to have any right, title or interest in the car or the things seized. He merely appears to be the driver of the car and therefore, in possession of the automobile. *See State v. Wood*, 613 S.W.2d 898, 900 (Mo.App.1981) (defendant failed to claim that he was owner of car searched and therefore had no standing to assert the 4th amendment right). There is no evidence that he possessed the car with the consent of the owner. *See State v. Damico*, 513 S.W.2d 351, 359 (Mo.1974) (defendant had no standing to assert 4th amendment right where he failed to show ownership or possession with owner's consent of the car searched); *State v. Gollaher*, 628 S.W.2d 365, 366 (Mo.App.1982) (statutory artisan's lien is insufficient interest by defendant to assert 4th amendment rights in car seized). Because defendant has not established a sufficient interest in the vehicle to assert an expectation of privacy, we have no need to divide the legality of search on the conjunctive second ground, that the search was unlawful. "Since [defendant] has no proprietary or possessory interest in the vehicle, he cannot challenge the validity of the search, even if the arrest was unlawful (a question we do not reach)." *State v. Damico*, 513 S.W.2d at 359.

## SUPPRESSION OF IDENTIFICATION

The defendant filed a pretrial motion to suppress the victim's identification of defendant. Such motion was overruled. Immediately prior to trial, defendant's counsel renewed all motions to suppress evidence and statements made by defendant as continuing motions throughout the trial. Defendant's counsel did not renew his motion to suppress identification, nor did defendant object to the identification at trial. We hold that defendant failed to preserve this identification issue for appellate review, by reason of his failure to object when the identification was offered at trial.

The rationale for this rule is clearly established in law. After hearing the evidence on motion to suppress, it is possible that defendant may become convinced that his motion is without merit. By requiring him to renew his constitutional objection when the evidence is offered at trial, the court will be advised that defendant continues to consider the evidence inadmissible. Additionally, a renewed objection allows the judge to reconsider the identification's inadmissibility. *State v. Yowell*, 513 S.W.2d 397 (Mo. banc 1974); *State v. Morris*, 662 S.W.2d at 892 (Mo.App.1983).

Defendant sought to pursue the issue again in his motion for a new trial. The defendant cannot resurrect this abandoned issue in his motion for new trial after already allowing it to die at trial for lack of proper objection. *State v. Hulsey*, 557 S.W.2d 715, 718 (Mo.App.1977).

We have, nonetheless, considered the issue under Rule 30.20 to determine whether the admission of the identification into evidence was plain error affecting substantial rights of the defendant.

The complaint is that the out of court identification was so inherently suggestive that it was conducive to mistaken identification, and under the "totality of circumstances," the evidence is unreliable. In support of the contention of suggestiveness, defendant cites the following facts. The victim was taken to the highway where the defendant had been stopped by police and told to look at the car and three black males. Defendant was laying on the grass, handcuffed, and surrounded by five marked police cars whose lights were flashing. One at a time, each man was brought

over to the police officer's car in which the victim sat and placed under spotlights to be identified.

The courts have recognized that allowing the victim to see the suspect at the scene of the crime or at the scene of the arrest is an approved procedure. *State v. Ralls*, 583 S.W.2d 289, 291 (Mo.App.1979). This is true unless the witness made the identification as a response to the suggestions or encouragement of the police, rather than on his own observation and visual recollection of the defendant's appearance. *State v. Johnson*, 618 S.W.2d 443, 445 (Mo.App. 1981). Further, the shorter the length of time between the crime and the confrontation, the greater the reliability of the identification because the details are fresh in the witness's mind. *State v. Johnson*, supra.

■ Also, it is not improper for the police to inform the identifying witnesses that the police have a suspect they might be able to identify. *State v. Carter*, 571 S.W.2d 779, 782 (Mo.App.1978). An identification made moments after a robbery as the defendant sat handcuffed in a police car has been admitted into evidence. *State v. White*, 549 S.W.2d 914, 918 (Mo.App. 1977). *See, State v. Dickerson*, 568 S.W.2d 559 (Mo.App.1978) (defendant identified immediately outside jail cell and in handcuffs). "The mere fact that the three men were handcuffed and in the custody of the police would not constitute the line-up 'unduly suggestive or unfair.'" *State v. Maxwell*, 502 S.W.2d 382, 389 (Mo.App.1973).

■ In view of the law, the evidence in the instant case does not show that the police encouraged or prompted the witness to identify the defendant at the time of the arrest. The victim acted on her "own observation and visual recollection of the defendant's appearance." The length of time between the crime and confrontation was about one hour. At the time she viewed each suspect from inside the police car, the defendant was not handcuffed. We hold the identification was not impermissibly suggestive.

■ Defendant alleges that Ms. Muse was also suggestively influenced by the prosecutor who showed her photographs of the three men in the prosecutor's office prior to a court proceeding. This unobjected action by the prosecutor is permissible especially when the witness was accurate and certain as to her description at the scene and at the arrest locale. Defendant's position is without merit.

■ Defendant further urges that the identification was unreliable and in support thereof alleges that there is no independent basis of identification. Defendant alleges that Ms. Muse did not have sufficient opportunity to view the suspect and that the highly suggestive nature of the out of court identification tainted the in court identification.

Five factors are relevant in assessing the reliability of identification testimony.

1. The opportunity of the witness to view the criminal at the time of the crime;

2. The witness's degree of attention.

3. The accuracy of the witness's prior description of the criminal.

4. The level of uncertainty demonstrated by the witness at the confrontation, and

5. The length of time between the crime and the confrontation.

*State of Missouri v. Charles*, 612 S.W.2d 778, 780 (Mo. banc 1981).

1. Ms. Muse had ample opportunity to view the defendant while they took her to another car and during the approximate half hour they accosted her.

2. The witness testified that she had three drinks that evening and entered her car at 12:15 a.m. She was accosted 3½ hours later. The witness was attentive while the suspects threw her down on the back end of a car and while she was being partially disrobed.

3. The witness accurately described the defendant as the one with the two able arms and glasses who was accompanied by another man with an arm in a sling and another man having a artificial arm. She

gave the police officer their approximate age, height, weight and a general description of defendant's clothing. The witness accurately described the car and type of license.

4. The witness was confident of the accuracy of her identification, both in court and at the scene of the arrest.

5. The length of time between the crime and the confrontation was brief—approximately one to one and a half hours.

Based on these five factors, the identification of defendant bears every indication of reliability.

 Finally, defendant argues that the trial court erred by overruling his motion to suppress identification because defendant was arrested without probable cause.

> Probable cause for an arrest without a warrant exists where the facts and circumstances within the arresting officer's knowledge and of which they have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been or is being committed [citation omitted]; and that the person arrested is guilty of that offense [citation omitted].

*State v. Olds*, 603 S.W.2d 501, 505 (Mo. banc 1980).

In the case at bar, the arresting officer had a description of the car, containing three black males wanted for sexual assault. Additionally, the description stated that one of the men had his arm in a sling, another had an artificial arm and the third was wearing glasses. Further, the officer was given a partial description of the Illinois license plate number. The officer had positioned himself on I–70 where he thought the route an Illinois resident fleeing from Bridgeton would take. With minor discrepancies, the three suspects and the car pulled over matched this description. This collective information was sufficient to constitute probable cause. With the solidity of the arrest established, the motion to suppress the identification on grounds of lack of reasonable cause was properly overruled. Judgment affirmed.

CARL R. GAERTNER and KAROHL, JJ., concur.