STATE of Missouri, Respondent,

v.

Arlanders TUNSTALL,
Defendant/Appellant.

No. 61512.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 16, 1993.

Susan K. Eckles, St. Louis, for defendant/appellant.

William L. Webster, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Presiding Judge.

In this jury-tried case, defendant, Arlanders Tunstall, appeals from convictions of second-degree robbery in violation of § 569.030 RSMo 1986 and third-degree sexual abuse in violation of § 566.120 RSMo 1986. Defendant was sentenced as a prior, persistent, and class X offender to concurrent terms of twenty-eight years' imprisonment on the robbery charge and six months' imprisonment on the sexual abuse charge. We affirm.

Viewed in a light most favorable to the verdict, the evidence adduced at trial established the following facts. Late in the evening of June 20, 1990, Jennifer Plattner and Jill Tullman visited Ave's Restaurant at Euclid and Laclede in the City of St. Louis. While at the restaurant, Plattner and Tullman met several friends: Jordan Palmer, Michael Green, and Jeff Glickman. Around midnight, Plattner and Tullman left the restaurant and walked to their car, which was parked in an alley nearby.

As they approached the car, defendant walked up behind them and asked for a dime. Plattner refused the request and entered the car on the driver's side. As Tullman entered the car on the front passenger side, defendant leaned inside, attempted to grab Plattner's necklace, and began pulling Tullman out of the car, grabbing at her breasts and between her legs. Plattner injured defendant's face with her car keys; he struck her on the head several times, grabbed her purse, and fled.

Plattner and Tullman drove back to the restaurant and saw Palmer, Green, and Glickman outside. The women stated they had been mugged in the alley by a black male and indicated which direction the man had fled. Palmer and Green ran to the alley while Glickman got his car; Tullman went into the restaurant to call the police.

Palmer and Green confronted a black male they observed entering a car approximately one and one-half blocks away; however, Plattner and Tullman stated the man was not the man who had robbed them. Palmer and Green apologized to the man and searched the alley where the incident occurred, but saw nothing. Glickman approached the alley in his car, and Palmer and Green entered the vehicle. As they drove west on Laclede, the men observed defendant hiding behind a brick wall or stairway approximately 100 yards from Ave's. Palmer and Green exited the car and chased him. Palmer continued to pursue defendant over a fence and through an alley; Green and Glickman drove to the other side of the alley and blocked defendant's path.

When Palmer demanded that defendant return Plattner's wallet and purse, defendant threw some coins at Green. Defendant then apologized, retrieved Plattner's wallet from his sweatpants, and threw it to Palmer. In response to Palmer's demand for Plattner's purse, defendant stated he had dropped it near the fence where he was first observed. Palmer and Green took defendant to that location, but found nothing.

Officer Steven Tucker of the St. Louis Police Department arrived at the scene in response to the call from Ave's. Defendant fled through an alley toward West Pine; Tucker broadcast defendant's description over the police radio and drove around the block to the opposite side of the alley. While in his patrol car on West Pine, Officer James Wurm observed a man matching the description broadcast emerge from an alley and lie down behind some bushes. Wurm exited his vehicle and approached the man; Tucker arrived, and the officers took defendant into custody. Both officers noticed a fresh cut on the right side of defendant's face. Plattner, Tullman, Palmer, and Green arrived at the scene and identified defendant; they also identified defendant in court from a photograph taken shortly after his arrest.[1] Defendant did not testify at trial and offered no evidence in his defense.

In point one, defendant contends the trial court erred in overruling his motion to suppress and admitting testimony concerning the pretrial and in-court identifications of defendant. Defendant contends the identifications were unreliable and tainted by suggestive pretrial procedures.

In determining the admissibility of identification testimony resulting from allegedly suggestive pretrial identification procedures, we determine (1) whether the procedure was suggestive; and (2) if it was suggestive, what impact the procedure had upon the reliability of the witnesses' identification. *State v. Vinson*, 833 S.W.2d 399, 406 (Mo.App.1992). We use the same test for determining the admissibility of both out-of-court and in-court identification testimony. *State v. Williams*, 717 S.W.2d 561, 563, 564 (Mo.App.1986).

Defendant contends the identification procedures used by the police were suggestive because he was handcuffed and in the presence of uniformed police officers when identified by the witnesses at the scene. We disagree. Although any one-on-one confrontation may suggest to a witness that police believe the subject is the perpetrator, Missouri courts have routinely held that such show-ups are not unduly suggestive, even when the subject is handcuffed. *Id.* at 564. This is particularly true where, as here, police make no overt remarks concerning the subject's identity. *Id.*

Defendant also contends the prosecutor used suggestive pretrial identification

---

1. Defendant was not present in the courtroom during the trial because he engaged in several outbursts and refused to agree to remain quiet.

procedures by showing the state's witnesses a photograph of defendant shortly before trial. In making this argument, defendant relies solely on *United States v. Dailey*, 524 F.2d 911 (8th Cir.1975). In *Dailey*, the United States Court of Appeals for the Eighth Circuit found impermissible suggestion in the prosecutor's display to a witness of a single photograph of the defendant a month and a half after the crime and two hours before trial, where the witness knew the man pictured was awaiting trial for the robbery attempt and it was questionable whether the witness had ever identified the defendant upon his arrest, as the witness asserted. *Id.* at 914–15. Conversely, our court has found no suggestive influence when prior to a court proceeding a prosecutor showed a witness photographs of the three men who had accosted her, where the witness had previously identified the three men at the scene of their arrest. *State v. Overstreet*, 694 S.W.2d 491, 495 (Mo.App. 1985). Under those circumstances, the court in *Overstreet* found the prosecutor's action permissible, "especially when the witness was accurate and certain as to her description at the scene and at the arrest locale." *Id.*[2]

 Even assuming the prosecutor's photographic display was unduly suggestive, we find no error in the trial court's admission of the identification testimony. It is the reliability of an identification, not its suggestiveness, that supports admissibility, and a suggestive out-of-court identification procedure does not invalidate an in-court identification that is otherwise independently reliable. *State v. Jones*, 735 S.W.2d 87, 89 (Mo.App.1987). Factors a court is to consider in determining reliability include the witness' opportunity to view the criminal at the time of the crime; the

witness' degree of attention, the accuracy of the witness' prior identification of the criminal; the level of certainty demonstrated at the confrontation; and the time between the crime and the confrontation. *State v. Moore*, 726 S.W.2d 410, 412–13 (Mo.App.1987), *citing Manson v. Brathwaite*, 432 U.S. 98, 113, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140, 154 (1977).

Applying these factors, we find the identification of defendant sufficiently reliable. Plattner and Tullman faced defendant as he approached within five feet of their car; they also viewed him from a distance of inches as he leaned into the car while its overhead light was on. The entire incident lasted approximately three to five minutes. Although the women were frightened and screaming, nothing indicates their attention was directed away from defendant; in fact, Plattner was sufficiently focused on defendant to gouge his face with her car keys. Further, Plattner and Tullman were sufficiently certain of defendant's appearance to know the first person Palmer and Green confronted was not the robber, although the record indicates they described the robber to Palmer, Green and Glickman only as a "black male." When the men stopped defendant and demanded the return of Plattner's belongings, defendant apologized, removed Plattner's wallet from his sweatpants, and admitted to having dropped her purse where he was first observed. Police arrested a man who had a fresh cut on his right cheek and wore the same clothing as the man Palmer, Green, and Glickman had stopped. Finally, nothing in the record indicates the witnesses expressed any uncertainty when they identified defendant at the time of his arrest, which occurred less than thirty minutes after the crime.[3] We find the identification

2. Perhaps significantly, the court reviewed the identification issue only for plain error. *State v. Overstreet*, 694 S.W.2d 491, 494 (Mo.App. 1985).

3. We reject defendant's contention that a "confrontation" between the witnesses and defendant may not have occurred at the scene of the arrest. As defendant asserts, it is not clear from the testimony of Plattner, Palmer, and Green whether the witnesses were asked to identify defendant or simply viewed him and observed

him being placed into a police vehicle at the scene. However, Tullman testified, "We were asked to identify him as, was this the man." Officer Tucker testified defendant was shown to the witnesses and identified by the two victims and "two male subjects." Similarly, Officer Wurm testified defendant was shown to and identified by "four people" who had come back to the scene of the arrest. We find the evidence sufficient to indicate a "confrontation" between the witnesses and defendant.

of defendant reliable apart from any suggestive pretrial procedures. Point one is denied.

■ In point two, defendant alleges the trial court erred in conducting a sentence enhancement hearing pursuant to § 558.-021 RSMo 1986 without defendant present, because he was thereby denied his right to confront witnesses and had no opportunity to present evidence on his own behalf. Defendant concedes this contention was not properly preserved for our review and requests we review the point for plain error pursuant to Rule 30.20.

Defendant was removed from the courtroom immediately prior to the sentence enhancement hearing after twice interrupting voir dire with nonsensical statements and refusing to respond to the court's request for assurances he would remain quiet. Defense counsel made no objection to defendant's removal, and the court proceeded with the hearing without defendant present. Defendant concedes he waived his right to be present during the trial itself but argues he did not waive his right to be present at the hearing since the court gave him no notice of the proceeding before removing him from the courtroom.

■ As defendant correctly asserts, a court considering an habitual criminal issue must accord the defendant procedural due process, which in such case requires that the defendant "be present with counsel, have an opportunity to be heard, be confronted with witnesses against him [or her], have the right to cross-examine, and to offer evidence of his [or her] own." *Specht v. Patterson,* 386 U.S. 605, 610, 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326, 330 (1967).[4] This right to due process includes the right to be personally present at the proceeding. *Camillo v. Armontrout,* 938 F.2d 879, 881 (8th Cir.1991).

Defendant contends he did not waive his right to be present because he had no no-

tice of the impending proceeding. However, defendant's attorney was present during the hearing and aware that defendant was to be charged, tried, and sentenced as a prior, persistent, and class X offender, as set forth in the substitute information in lieu of indictment filed less than three months after the original indictment and sixteen months before the hearing on this issue. We impute defense counsel's knowledge of the proceeding to defendant, *State v. Pinson,* 717 S.W.2d 266, 269 (Mo.App. 1986), and find he waived his right to be present at the hearing. Defendant does not contend counsel was denied the opportunity to fully participate and cites no evidence that was not presented on his behalf. We find no error, plain or otherwise. Point two is denied.

The judgment of the trial court is affirmed.

REINHARD and CRIST, JJ., concur.

---

4. Missouri law requires that a defendant be accorded "full rights of confrontation and cross-examination, with the opportunity to present evidence" at hearings for the imposition of an extended term. § 558.021.4 RSMo 1986. Section 558.021 was enacted to comply with the mandates set forth in *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). *State v. Berry,* 609 S.W.2d 948, 955 (Mo. banc 1980); *State v. Greer,* 783 S.W.2d 527, 530 (Mo. App.1990).