STATE of Missouri, Respondent,

v.

Kevin Lee MADISON, Appellant.

Kevin Lee Madison, Appellant,

v.

State of Missouri, Respondent.

No. 81251.

Supreme Court of Missouri,
En Banc.

Aug. 3, 1999.

Amy M. Bartholow, Asst. State Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for Respondent.

MICHAEL A. WOLFF, Judge.

Kevin Lee Madison was convicted by a jury of first degree burglary, unlawful use of a weapon, three counts of first degree endangering the welfare of a child, and three counts of armed criminal action. He was sentenced to ten years on the burglary count, ten years on each of the armed criminal action counts, five years on the

unlawful use of a weapon count, and five years on each of the counts of endangering the welfare of a child. All sentences were to run concurrently. Following opinion by the Missouri Court of Appeals, Southern District, this Court granted the State's application for transfer.

We affirm.

## Facts

Kevin Lee Madison and Donna Madison were married July 1, 1980. The couple had two children born during the marriage. The couple separated in 1988. After the separation, Donna Madison and the children lived in Neosho and Kevin Madison lived in Aurora. During that time, Kevin Madison visited Donna Madison and the children regularly. Early in 1994, Donna Madison decided she wanted to dissolve the marriage and told Kevin Madison. In February 1994, Donna Madison obtained an *ex parte* restraining order against Kevin Madison, but he was never served with it. The dissolution was not final until September 1994, when Kevin Madison was already in jail.

During the night of May 27, 1994, or early in the morning of May 28, 1994, Kevin Madison entered Donna Madison's home without her knowledge. Donna Madison, two nieces and a nephew, Donna Madison's daughter from a previous marriage, and the couple's two children were asleep in the house. Donna Madison testified that she was sleeping with her young niece and nephew when she awakened to find Kevin Madison holding a gun to her neck and threatening to kill her. Her screams awoke her daughter and older

niece, who came into the room. The girls testified that they saw Kevin Madison waving the gun around and pointing it at everyone in the room. Madison's daughter convinced Kevin Madison to give her the gun. The older girls left the room, but returned a few minutes later when Donna Madison screamed again after Kevin Madison produced another gun. Madison's daughter again convinced Kevin Madison to give her the gun. Kevin Madison took Donna Madison to work. After they left the house, the children called the police. When Kevin Madison and Donna Madison arrived at her place of employment, Kevin Madison was served with the restraining order and arrested.

## The Burglary Conviction

Although defense counsel argued to the jury that Madison did not enter the house unlawfully, we find nothing in the record to indicate that an issue as to the validity of the burglary conviction was raised on appeal or in the post-conviction motion. Because Madison's brief does not address the conviction for first degree burglary, pursuant to Rule 30.20,[1] we will not consider it in this opinion.

## The Child Endangerment Charges

■ The information that purportedly charged Madison with child endangerment in the first degree, a class D felony, misstated the mental state required by section 568.045, RSMo.[2] The information charged that Madison acted with "criminal negligence," the mental state required by section 568.050, RSMo,[3] for child endan-

---

1. Rule 30.20 states in relevant part, "Allegations of error that are not briefed or are not properly briefed on appeal shall not be considered by the appellate court except errors respecting the sufficiency of the information or indictment, verdict, judgement or sentence."

2. Section 568.045 states in relevant part:
   1. A person commits the crime of endangering the welfare of a child in the first degree if:

(1) He knowingly acts in a manner that creates a substantial risk to the life, body, or health of a child less than seventeen years old; or . . . .

3. Section 568.050 states in relevant part:
   1. A person commits the crime of endangering the welfare of a child in the second degree if:
   (1) He with criminal negligence acts in a manner that creates a substantial risk to

germent in the second degree, a class A misdemeanor. The information correctly stated the title of the offense, the statute creating the offense, and the classification of the offense. The jury instructions correctly stated the law as to the offenses, including the requisite mental state. However, the prosecutor mentioned "criminal negligence" three times during the trial, without objection. Kevin Madison raised his objection to this variance for the first time on appeal.

The main issue raised on the child endangerment convictions is whether this trial was conducted on the wrong legal theory, an error so fundamental as to require reversal. However, we need not reach that issue because Madison, whose defense was that he did not wave or point a gun at the children, was not prejudiced by the trial error and the improperly stated information, especially since there was no objection from the defense.

█ A variance between an information and the instructions to the jury after the evidence is submitted is not necessarily fatal to the state's case. *State v. Lee*, 841 S.W.2d 648 (Mo. banc 1992), holds that a variance between the charges in the information and the jury instructions is prejudicial, and therefore reversible error, only where it affects the defendant's ability adequately to defend against the charges in the information. 841 S.W.2d at 650. In *Lee*, the defendant was not prejudiced because his defense at trial, if believed by the jury, was adequate to disprove both the charges in the information and the charges in the instruction. Similarly, *State v. Parkhurst*, 845 S.W.2d 31 (Mo. banc 1992), holds that when a defendant raises insufficiency of the information for the first time on appeal, the information will be "deemed insufficient only if it is so defective that (1) it does not by any reasonable construction charge the defendant with the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeop-

ardy in the event of acquittal are prejudiced." 845 S.W.2d at 35. In *Parkhurst*, the Court held that the *omission* of the required mental state was not a fatal defect because, in the circumstances of that case, it did not adversely affect the preparation of a defense and it did not prejudice the defendant.

█ In this case, a careful reading of the information might have served to put Madison on notice of the crime with which he was charged since the statutory reference and the classification were accurate. However, mentioning a statute number in an information is not conclusive as to the offense charged and is "treated as surplusage." *State v. Cusumano*, 819 S.W.2d 59, 61 (Mo.App. E.D.1991). The defense is entitled to rely on the factual allegations in the charge. This reliance would have affected the preparation of the defense only to the extent that Madison was defending factually against child endangerment in the second degree. That does not seem to be the case here, because Madison prepared and presented a defense to the factual elements alleged; his defense was that he did not endanger the children by pointing or waving a gun at them.

Even if the defendant shows that the charging document was incorrect, *Parkhurst* and *Lee* require that the defendant demonstrate actual prejudice in order to be entitled to relief. If it were just the defect in the information, we would be faithful to *Lee* and *Parkhurst* in this situation and affirm Madison's conviction for child endangerment and armed criminal action without further discussion. Madison's defense that he did not wave or point a gun in front of the children, if believed by the jury, should have been an adequate defense regardless of his state of mind. There seems little doubt that there was at least one gun, and that Kevin Madison picked up the gun. The essential fact in dispute is whether defendant Madison

the life, body, or health of a child less    than seventeen years old; or . . . .

waved and pointed a gun at the children, thus knowingly endangering them.

The prosecutor presented and argued a less stringent standard, that of "criminal negligence." In his opening statement, the prosecutor told the jury, "... three counts of felony endangering the welfare of a child, and that's that he, with *criminal negligence*, acted in a manner that created a substantial risk ..." (Tr. 67) (emphasis added). During the state's cross-examination of Madison, the prosecutor asked, "Let's talk about Count III. You never acted with *criminal negligence* in a manner creating risk of harm." (Tr. 199–200) Then, prior to the court's instructions to the jury, and final arguments, the trial court held a jury instruction conference and went over the instructions, on the record, with counsel. The instructions correctly stated the law, contrary to the prosecutor's comments in opening statement and in the cross-examination of Madison. But in final argument, the prosecutor told the jury: "... he endangered each and every one of them, and that was *criminally negligent*, and certainly that was a significant threat to their lives." (Tr. 218) The prosecutor never argued that Madison knowingly endangered the children.

In final argument, the defense attorney argued:

"Did he endanger the life of any child? No. I asked him: 'Did you intend to hurt the kids?' He said, 'No.' Now, he had that gun in his hand. I don't think there is any doubt about it; although, he said it was pointed to the ground. He had that gun in a safe position, and he didn't intend to hurt anybody." ...

"Now, what did he do with the gun? Did he wave it around? I don't think so."

■ Where an objection is timely made, "a trial court has the duty, not discretion, to restrain and purge such arguments." *Fahy v. Dresser Industries, Inc.,* 740 S.W.2d 635, 641 (Mo. 1987). *See also, Beis v. Dias,* 859 S.W.2d 835 842 (Mo.App. S.D. 1993), and *Fox v. Ferguson,* 765 S.W.2d 689, 691 (Mo.App. 1989). Our insistence on the proper objection is based on the notion that opposing counsel should not be permitted to let error in argument pass without objection and then to raise the matter after trial or on appeal. Madison's counsel made no objection to the use of the term "criminal negligence," even at sentencing.

■ As noted, the prosecutor referred to the concept of "criminal negligence" in the opening statement, in cross-examination of the defendant, and in final argument. However, there is *no suggestion in the record that the prosecutor emphasized the term* in any of these references to it. While the defense has the obligation to object to misstatements of the law, in order to preserve the point for appeal, the defense does not have the obligation to supply the prosecution with a proper legal theory. In this case, the trial judge conducted a careful on-the-record review of jury instructions with counsel. Even after this review, neither the attorneys nor the judge noted the discrepancy between the information and the prosecution's argument and the instructions.

Despite the prosecutor's references to criminal negligence, Madison's argument that the child endangerment convictions should be reversed must ultimately fail. Madison was not prejudiced in preparing and presenting his defense because the argument that he did not wave a gun in front of the children and point the gun at them, if believed by the jury, would have been sufficient no matter what state of mind was alleged. He simply cannot demonstrate prejudice or that the outcome would have been different if the word "knowingly," was used in the information and the prosecutor's argument. When his defense is that he did not do the act, his mental state is irrelevant.

■ Although the instructions concerning the child endangerment charges which were given to the jury conflicted with the argument made by the prosecutor, MAI–CR 3d 302.02, which was read to the jury

after its members are sworn, and MAI–CR 3d 302.06, read to the jury before deliberation, instructed that the opening statements and closing arguments are not evidence, and that members of the jury are to be guided by the evidence and the law as given to them by the court. Furthermore, a jury is presumed to know and follow the instructions. *State v. Preston,* 673 S.W.2d 1,7 (Mo. banc 1984). In context, we do not conclude that Madison was tried on the wrong legal theory.

### The Double Jeopardy Argument

■ Madison's second point on appeal argues that both the armed criminal action and unlawful use of a weapon charges seek to punish him for the same act and, therefore, subject him to double jeopardy.

■ In determining allowable prosecution for double jeopardy purposes, a defendant can be convicted in a single trial of several offenses arising from the same set of facts without violating the double jeopardy clause. *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *see also, State v. Heslop,* 842 S.W.2d 72, 74 (Mo. banc 1992), *cert. denied,* 508 U.S. 921, 113 S.Ct. 2369, 124 L.Ed.2d 275 (1993); *State v. Morrow,* 888 S.W.2d 387 (Mo.App. S.D.1994); *State v. Foster,* 838 S.W.2d 60, 66 (Mo.App. E.D.1992). Double jeopardy does not apply unless one offense contains all of the elements of the other offense. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

■ Missouri decisions on the issue, after *Missouri v. Hunter, supra,* have held that convictions for both unlawful use of a weapon and armed criminal action do not offend double jeopardy. *See State v. Davis,* 849 S.W.2d 34, 44 (Mo.App. W.D. 1993), *State v. McKee,* 826 S.W.2d 26, 30 (Mo.App. 1992), and *State v. Gottsman,* 796 S.W.2d 27, 30 (Mo.App.1990). "Where, however, the armed criminal action conviction rests on some offense other than unlawful use of a weapon, conviction and punishment in the same trial of both armed criminal action and unlawful use of a weapon for the same conduct does not offend general cumulative punishment section 556.041 or the principle of double jeopardy."· 849 S.W.2d at 44. In this case, the predicate offense for each of Madison's armed criminal action charges is the corresponding charge of first degree child endangerment, whose elements are distinctly different from armed criminal action. But more importantly, Madison, who was tried in a single proceeding for his conduct, is not being placed twice in jeopardy. Under *Missouri v. Hunter, supra,* there is nothing in these statutes to preclude cumulative punishment for these offenses which arise from the same conduct. Madison's convictions for unlawful use of a weapon and armed criminal action do not constitute double jeopardy.

### Madison's Right of Confrontation

■ Madison asserts that the trial court violated his due process and confrontation rights when it sentenced him as a prior offender because he was not present at the enhancement proceeding. Section 558.021.4, RSMo, requires that defendants be afforded "full rights of confrontation and cross-examination, with the opportunity to present evidence" at persistent offender hearings.

■ Madison's attorney did appear on his behalf at the persistent offender hearing and did not object to his client's absence or to admission of a certified copy of Madison's prior conviction. When Madison was brought into the courtroom and informed that a "hearing" had taken place, he did not object. "Failure to assert an objection based upon the right of confrontation at the earliest possible opportunity constitutes a waiver of that objection." *State v. Smith,* 727 S.W.2d 188, 190 (Mo. App. W.D.1987). In *State v. Tunstall,* 848 S.W.2d 530 (Mo.App. E.D.1993), the court held that although the defendant was not present during the prior offender hearing, because his attorney was present and did not object to defendant's absence at any

time, defendant had waived his right to be present. Furthermore, Madison points to no evidence he could have presented at that hearing that would have prevented the court from concluding that he was a prior offender. To be entitled to vacation of sentence and remand, where the irregularity concerns determination of prior offender status, actual prejudice must be established. *State v. Lowery*, 926 S.W.2d 712, 713 (Mo.App. E.D.1996). Madison is not entitled to relief.

### Failure to Move for New Trial

■ Madison challenges the court's overruling of his Rule 29.15 motion for post-conviction relief based on his attorney's failure to file a motion for a new trial. Although Madison's attorney did not file a motion for a new trial, Madison filed an untimely *pro se* motion. That motion did not cite any issues that should have been raised in a motion for a new trial. During the evidentiary hearing on Madison's post-conviction relief motion, no live testimony was presented. The court found that there was no adequate showing that failure to file a motion for a new trial prejudiced Madison. The standard of review for denial of a motion for post-conviction relief is whether the motion court's findings and conclusions were clearly erroneous. Rule 29.15(k). The motion court's findings were not clearly erroneous based on the record.

■ "Defendant is not automatically entitled to have his sentences vacated because his trial counsel failed to file a motion for a new trial. Defendant is required to plead and prove this failure prejudiced him." *State v. Parnell*, 792 S.W.2d 635, 636 (Mo.App.1989). In that case, the court found that defendant's assertions of error could be resolved on appeal, so there was no prejudice from trial counsel's failure to file a motion for a new trial. As noted above, Madison does not cite any issues that should have been raised in a motion for a new trial and did not show prejudice.

### Madison's Decision to Testify

■ Madison alleges that he was compelled to testify against his will because his attorney told the jury during *voir dire* that he would testify. He raised this issue in his Rule 29.15 motion and the trial court denied relief. The standard of review of this denial is whether the motion court's findings are clearly erroneous. Rule 29.15(k). As noted above, when the evidentiary hearing was held on Madison's 29.15 motion, Madison did not testify at the hearing or present any live testimony that could have established that his attorney acted contrary to his wishes. Although Madison alleges that he told his attorney he did not want to testify, evidence from the trial appears to indicate otherwise. Before Madison took the stand, his attorney stated to the court, "I have told him that he doesn't have to testify; that we've put in an instruction that would tell the jury that they can't hold that against him; and he has decided to testify, but I have told him he didn't have to. He said he would."

■ Counsel's actions are presumed to be a matter of trial strategy. *State v. Tokar*, 918 S.W.2d 753, 766, 768 (Mo.banc 1996). Without calling trial counsel to the stand in the evidentiary hearing, Madison did not overcome that presumption. The cases cited by Madison in support of his argument are all cases in which the prosecution told the jury the defendant would testify. He cites no cases where an attorney's conduct that allegedly compelled his client to testify resulted in post-conviction relief. Based on the record, the findings of the motion court are not clearly erroneous.

For the reasons stated above, the judgments are affirmed.

All concur.