**STATE of Missouri, Plaintiff–Respondent,**

v.

**Paul WILLIAMS, Defendant–Appellant.**

**No. 18298.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 19, 1993.

Donald W. Petty, Liberty, for defendant-appellant.

Jeremiah W. Nixon, Atty. Gen., Michael J. Runzi, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

A jury found defendant guilty of the Class A felony of robbery in the first degree, § 569.020,[1] and he was sentenced to ten years' imprisonment. Defendant appeals.

Defendant does not challenge the sufficiency of the evidence to support the conviction. He contends that the trial court erred: (1) in refusing to give an instruction submitting the lesser included offense of robbery in the second degree, and (2) in permitting the state to impeach his testimony by use of a finding of guilty by a jury in a separate case.

In addition to its formal portions, the information charged that the defendant committed the Class A felony of robbery in the first degree, in that on or about August 15, 1991, in Jasper County, "the defendant forcibly stole cash and checks in the possession of Ronald M. Tucker, and in the course thereof, [defendant] used a dangerous instrument against Ronald M. Tucker."

1. All references to statutes are to RSMo 1986, V.A.M.S.

The state's eyewitnesses were Jonathan Neff and Ronald Tucker.

Jonathan Neff testified: I know defendant; I owed defendant some money and I devised a way with which to pay him; defendant and his brother Ron Williams were supposed to rob me at the Pizza Hut; I was going to fake a robbery and give them the money that belonged to the Pizza Hut; this was to take place on the night of August 15, 1991; it was my first night closing, and I came up short on the books and called manager Tucker in; I tried to contact defendant and tell him not to show up, but I could not reach him; I figured if they saw Tucker there they wouldn't go ahead and try to do it; about 2:45 a.m. Tucker and I decided to leave; I walked out the door first; Tucker had the money bags and was behind me; Tucker was locking the door when I was jumped by Ron Williams and defendant; after they knocked me down, I stayed down, and they went after Tucker; defendant had a wooden boat oar in his hand and with it he knocked Tucker smack in the face; then they commenced to beat Tucker up; they were both beating Tucker up; defendant and his brother took three money bags and ran off; I entered into a plea bargain with the state.

Tucker testified: On August 15, 1991, I was employed as manager of the Pizza Hut in Joplin; John Neff was assistant manager; the Pizza Hut closed at midnight; John Neff closed on August 15, 1991; this was Neff's first time to close; after midnight, I got a call from Neff because he couldn't balance the books; I went there and tried to balance the books but couldn't; Neff and I left the Pizza Hut about 2:30 a.m.; under my left arm I had five money bags containing cash and checks; I heard a noise to the left and a man standing there with a club hit me in the face; he hit me more than once with a club; a second man hit me and kicked me; they got three bags away from me; I required hospitalization that night for bruises over my shoulder and face and a broken nose; I was struck across the nose with a big club.

Defendant's witnesses were Ronald Williams, James Cochran, and defendant himself.

Ronald Williams testified that he was involved in the robbery and that his accomplice was Keith Bradford. He testified that defendant was not present. He also testified that a boat oar was used on Tucker and that he "reckoned" Bradford picked it up.

Cochran testified that at the time of the offense he and defendant were at a convenience store several blocks from the scene of the robbery.

Defendant testified that at the time of the robbery he and Cochran were at a convenience store several blocks away. Defendant said: "I did not rob the Pizza Hut at 10th and Maiden Lane. I was not there. I did not commit a robbery of any kind."

■ Defendant's first point is that the trial court erred in refusing to give, at his request, an instruction on robbery in the second degree "because the evidence adduced failed to support the use of a dangerous instrument against the victim beyond a reasonable doubt, as required under the first degree robbery instruction, but could support a finding of guilt of the lesser included offense of second degree robbery."

Section 556.046 reads, in pertinent part:
2. The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

In *State v. Word*, 829 S.W.2d 113, 116 (Mo.App.1992), the court said:
The trial court is required to submit a lesser-included offense instruction if requested by defendant only where there is some affirmative evidence of the lack of an essential element of the higher offense which would not only authorize acquittal of the higher offense but would also sustain a conviction of the lesser offense. Both conditions must be met because a jury always has the option of

finding the accused not guilty of the offense charged. (Citing authorities.)

To similar effect see *State v. Murray*, 744 S.W.2d 762 (Mo.banc 1988).

In support of his first point, defendant argues:

The evidence as to the use of a dangerous weapon [on] Ronald Tucker is not substantial. Tucker, in his testimony, recalled being hit with a "club." However, he was not able to identify which of the two men who attacked him struck him with this object. John Neff testified that a boat oar was present at the scene and was used by [defendant] to hit Tucker in the face. On the other hand, Ron Williams testified that Keith Bradford had picked up the boat oar which was laying behind John Neff's car and took a swing at Ron Tucker, although he stated he did not see the actual blow land on Tucker's person. This boat oar was never produced at trial and no description of its size, shape or other characteristics was given by any witness. [Defendant] submits that the jurors could reasonably have concluded either of the following on the basis of the evidence offered. 1. [Defendant] did not wield the boat oar. 2. The oar was not a dangerous instrument as defined in the State's verdict director.

Section 569.020 reads, in pertinent part:

1. A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,

. . . . .

(3) Uses or threatens the immediate use of a dangerous instrument against any person ...

Section 569.030 reads, in pertinent part:

1. A person commits the crime of robbery in the second degree when he forcibly steals property.

Section 556.061 reads, in pertinent part:

In this code, unless the context requires a different definition, the following shall apply:

. . . . .

(9) **"Dangerous instrument"** means any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.

. . . . .

(26) **"Serious physical injury"** means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

In *State v. Lawshea*, 798 S.W.2d 198 (Mo.App.1990), defendant was found guilty of two counts of robbery in the first degree. One offense took place on December 28, 1988, at a convenience store. The state's evidence showed that defendant told the clerk to take money from the cash register. Defendant had his hand in his pocket and told the clerk he had a gun. The second offense was committed two weeks later at the same store under essentially the same circumstances. On appeal, defendant claimed that the trial court erred in failing to give instructions on robbery in the second degree. In rejecting that contention, the court said, at 199–200:

Both first and second degree robbery require the forcible stealing of property, but first degree robbery requires an additional element that the defendant causes serious physical injury, or is armed with a dangerous weapon, or uses or threatens the immediate use of a dangerous instrument, or displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.... It appears to be settled law that if the defendant's evidence was that he was not at the scene and the evidence supports robbery in the first degree as here, failure to instruct down is not error. Here defendant testified that he had not been in the area during the period of these crimes. If the jurors believed the state's witnesses, then defendant was guilty of first degree robbery. If they believed defendant, he was not guilty.

■ In the case at bar, the state's evidence showed that during the course of the

robbery Tucker was struck across the nose with "a big club" or "boat oar," wielded by defendant, and that Tucker sustained injuries which included a broken nose. The three defense witnesses testified that defendant was not present. The club or boat oar, under the circumstances in which it was used, was a dangerous instrument within the definition of § 556.061(9). Under § 569.020.1(3), it was immaterial which of the two robbers used the dangerous instrument, so long as defendant was one of the two.

There was no evidence that the robbery was committed by any method other than by the use of a dangerous instrument. The trial court did not err in denying defendant's request that the court give an instruction submitting robbery in the second degree. *State v. Lawshea, supra;* See also *State v. Boyer,* 805 S.W.2d 693, 694–695[2] (Mo.App.1991); *State v. Twitty,* 793 S.W.2d 561, 565–566[9] (Mo.App.1990). Defendant's first point has no merit.

■ Defendant's second point is that the trial court erred in permitting the prosecutor, over defendant's objection, to cross-examine defendant with regard to the fact that one week earlier, in another case, a jury found him guilty of felony stealing. Defendant contends that the verdict is not a "finding of guilt" as that term is used in § 491.050, "in that this verdict was not final for appeal purposes."

Section 491.050 reads, in pertinent part:

Any person who has been convicted of a crime is, notwithstanding, a competent witness; however, any prior criminal convictions may be proved to affect his credibility in a civil or criminal case and, further, any prior pleas of guilty, pleas of nolo contendere, and findings of guilty may be proved to affect his credibility in a criminal case. Such proof may be either by the record or by his own cross-examination.

"As a general rule, when a defendant testifies, he is subject to cross-examination and impeachment as is any other witness. § 546.260." In response to the prosecutor's question, defendant admitted that "just last week" in Jasper County a jury found him guilty of felony stealing.[2]

Defendant says: "It is inequitable to use jury verdicts which have not become final for purposes of appeal to impeach credibility."

A similar contention was made and rejected in *State v. Kayser,* 671 S.W.2d 352 (Mo.App.1984). Citing *State v. Jackson,* 651 S.W.2d 547 (Mo.App.1983), the court held that § 491.050 permits impeachment of a witness by evidence of any finding of guilt. The court said, at 354: "The pendency of an appeal has no effect on the existence of a finding of guilt by the jury. It is a truth which should be weighed with all other evidence to judge the credibility and veracity of witnesses' testimony." See also *State v. Foster,* 684 S.W.2d 597 (Mo.App.1985); 16 A.L.R.3d 725, 736–8 (Credibility—Former Conviction—Appeal). *State v. Flenoid,* 838 S.W.2d 462, 468[9] (Mo.App. 1992).

This court agrees with the following statement contained in the excellent brief of the state:

[T]his Court need only refer to the plain language of the statute for guidance. Section 491.050 specifically states that "findings of guilty may be proved to affect [defendant's] credibility in a criminal case." The jury is the finder of fact, and it is the jury who makes the finding of guilty.

Defendant's second point has no merit. The judgment is affirmed.

CROW and GARRISON, JJ., concur.

---

2. The instant trial was held on June 9, 1992. On June 4, 1992, in Jasper County, defendant was convicted of felony stealing. That convic-

tion was affirmed in *State v. Williams,* 860 S.W.2d 7 (Mo.App.1993).