STATE of Missouri, Respondent,

v.

Anthony PETALINO, Appellant.

Anthony PETALINO, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 47638, WD 49406.

Missouri Court of Appeals,
Western District.

Dec. 13, 1994.

Terrence M. Messonnier, Asst. Public Defender, Sedalia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary Moulton Bryan, Asst. Atty. Gen., Jefferson City, for respondent.

Before SPINDEN, P.J., and LOWENSTEIN and ELLIS, JJ.

SPINDEN, Presiding Judge.

In appealing his convictions of first degree burglary and stealing, Anthony Petalino complains that his identification was unlawfully suggestive because police singled him out for identification by the victim. He also complains that the trial court erred by refusing to let the jury hear exculpatory evidence and by overruling his motion for acquittal because the state did not prove that the value of the property taken was more than $150. After his convictions, he filed a motion for postconviction remedies pursuant to Rule 29.15 which the trial court denied. We affirm the trial court's judgment on the burglary and stealing charges. The state confesses error in the Rule 29.15 motion, and we remand for further proceedings.

Petalino was convicted in connection with the theft of a radar detector from Michael and Susan Sembroff of rural Liberty on August 1, 1992. The detector was taken while the Sembroffs were helping Petalino to free a recreational vehicle which had become stuck between 2 A.M. and 3 A.M. on an unpaved road just off Stockdale Road near the Sembroffs' house.

Petalino drove the RV to an old bridge between Liberty and Excelsior Springs. Riding in the RV with him were Melissa Hopper, John Robinson, and Tammy Colter. Arriving in a separate car were Sherry Winfree, DeWayne Perkins, Shane Pullman, and Mike Powell. Winfree, Perkins, Pullman, and Powell left briefly before Petalino decided to leave in his RV. As he backed the RV off the bridge, the rear bumper dug into the ground and lifted the rear tires off the ground. Petalino could not free the vehicle.

Petalino, Hopper, Robinson and Colter walked to the Sembroffs' house. As the other three stood in the driveway, Petalino rang the doorbell and banged on the door. The Sembroffs responded together. They conversed with Petalino by yelling through the door. Although his wife was alarmed, Michael Sembroff opened the door. Hopper then walked up to the porch. They began discussing the situation through a glass storm door. Michael Sembroff decided to help them and went to a bedroom to put on shoes. Susan Sembroff continued talking to the couple through the glass storm door.

After Michael Sembroff went outside to help the couple, Robinson and Colter approached him. Susan Sembroff, watching from a window, saw Robinson and Colter for the first time. She became more alarmed and telephoned the sheriff. While she was talking to a deputy, she saw Petalino inside her house in the foyer with her purse in his hand. She had not invited him into her house. She yelled for him to put her purse down and to get out of her house. She ducked behind a desk and continued talking

to officers on the phone. She was too frightened to move from behind the desk or to hang up. Later, a deputy drove to her house to talk to her. He found her purse in the threshold of the door, holding the door open.

In the meantime, Michael Sembroff had fired up his tractor and had driven it to the stuck RV, a quarter mile away. The tractor had no lights, so Robinson and Colter had walked in front of the tractor holding a flashlight. Hopper walked behind. Sembroff had seen Petalino walking with Hopper briefly, but Petalino disappeared. When Sembroff arrived at the stuck RV, Petalino was gone.

After he had worked for about 10 minutes to free the RV, deputies arrived. Sembroff heard a report on one of the deputies' radios which caused him to drive his tractor back to his house. There he found his wife talking to a deputy and learned that one of the individuals had tried to steal her purse.

Meanwhile, deputies obtained the names of the RV passengers and determined that authorities had issued warrants for Petalino's arrest. As they searched for him, they found him hiding beneath the bridge. After deputies arrested Petalino and advised him of his rights, he assured them that he had nothing to do with Susan Sembroff's purse. He asked officers to take him to her so she could tell them that he was not the person who tried to take the purse.

Officers complied. They drove him in a squad car to the Sembroffs' driveway and asked the Sembroffs to identify him. Michael Sembroff told officers that Petalino was the person who knocked on their front door asking for help. Susan Sembroff told them that Petalino was the person who had stolen her purse.

Later that morning, Michael Sembroff discovered that a radar detector was missing from his car. The car had been parked, unlocked, in his driveway when Petalino and his associates walked up to the house to ask for help. Deputies later found the detector in Petalino's RV. Sembroff estimated its value to be more than $150.

At trial, a jury found Petalino guilty of first-degree burglary, in connection with his entry into the Sembroff's house, and two counts of felony stealing, in connection with the theft of the purse and radar detector. Petalino later filed a *pro se* motion seeking postconviction relief pursuant to Rule 29.15. On September 2, 1993, the court appointed an attorney to assist Petalino with his Rule 29.15 motion. The attorney entered an appearance as Petalino's counsel and requested more time to file an amended motion. The trial court granted the request, but the attorney did not file an amended motion. The court later entered findings of fact and conclusions of law denying Petalino's motion. It denied Petalino's motion to set aside these rulings and for reappointment of counsel the next day.

In the first of his four complaints on appeal, Petalino asserts that the trial court erred in allowing Susan Sembroff's testimony of how she identified Petalino in her driveway as the person who had stolen her purse. Petalino claims that the identification procedures were unduly suggestive and violated his constitutional rights.

■ The trial court has much discretion in ruling on these matters. *State v. Clark*, 809 S.W.2d 139, 142 (Mo.App.1991). We do not discern that the trial court abused its discretion.

■ Reliability, not suggestiveness, is the determinative factor. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989). We do not find that the identification procedures were impermissibly suggestive or unreliable.

■ Petalino asserts that allowing Susan Sembroff to identify him while he sat in the patrol car was unduly suggestive. This alone—without evidence that the police prompted or encouraged her identification—does not render the identification unduly suggestive. A victim's identification at an arrest scene is permissible so long as police did not encourage or prompt the victim to identify the suspect. *State v. Overstreet*, 694 S.W.2d 491, 494 (Mo.App.1985). We find no evidence that the police encouraged or prompted Susan Sembroff to identify Petalino; nor does Petalino claim that police did so.

■ Officers may return a recently-apprehended suspect to a crime scene for a witness' prompt identification. *Id.* at 495. "Sometimes the wise course is to bring the complainant together with the [suspect] as soon as possible, so that the [suspect] may be seen and either charged or released." *State v. Bynum,* 680 S.W.2d 156, 158 (Mo. banc 1984). The courts have concluded that the sooner an identification occurs after a crime, the more reliable it is because it occurs when details are fresh in the victim's memory. *Overstreet,* 694 S.W.2d at 495.

■ He also complains that officers permitted Michael Sembroff simultaneously to identify him as the individual who appeared at their front door. "By having both individuals identify [Petalino] at the same time," he argues, "the deputies substantially increased the probability that Mrs. Sembroff would identify Anthony as the burglar based on the fact that he was the individual who had come to the door asking for help." He also complained that Susan Sembroff was "hysterical" when she made the identification.

■ We find no merit in his claim. Susan Sembroff saw the individual who knocked on the front door, too. Petalino readily admitted that he was the person who banged on the Sembroffs' door. The record does not support his contention that Susan Sembroff was hysterical when she made the driveway identification. The testimony to which Petalino refers us does indicate that she was hysterical when she gave a description to deputies, nevertheless, the identification she gave the officer on the telephone (a person wearing blue jeans and a tee shirt) matched Petalino, and we find no indication that she had not calmed down when she identified him. Later when the deputy went to her house, she gave him a more detailed description which was consistent with Petalino's appearance and dress. Hence, Susan Sembroff's driveway identification was reliable and not impermissibly suggestive.

■ Petalino next claims that the trial court erred by not letting him present out-of-court statements by Perkins and Winfree. Perkins allegedly telephoned Petalino's mother and asked her where the radar detector was and what happened to it. Petalino claims that Winfree also called his mother. Winfree purportedly asked her to encourage Petalino not to "tell on" Winfree and Perkins. Petalino says he could not call Perkins and Winfree because they had pleaded the Fifth Amendment.

■ Any out-of-court statement used to prove the truth of the matter asserted is hearsay and is generally inadmissible. *State v. Shurn,* 866 S.W.2d 447, 457–58 (Mo. banc 1993). Petalino claims that these statements were not hearsay because he offered them merely to show that the declarants made them—not for the truth of the matter asserted. He is wrong. His argument is contrary to what he wanted the jury to infer from the statements: that Perkins and Winfree—not Petalino—took the radar detector.

■ Relying on *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), Petalino asserts that even if these statements were hearsay, the trial court still should have admitted them as exculpatory statements by unavailable third parties. To the extent that he is contending for unqualified admission of declarations against penal interests in criminal cases, he is wrong. Faced with the same argument, the Supreme Court of Missouri noted, "The Court in Chambers ... *explicitly refused to so hold.*" *State v. Turner,* 623 S.W.2d 4, 9 (Mo. banc 1981) (emphasis in original).

The *Turner* court ruled, however, "where substantial indicia of reliability appear *and declarant's complicity if true would exonerate the accused,* declarant's averments against an interest penal in nature may not be excluded[.]" *Id.* (emphasis in original). Without considering whether Perkins' and Winfree's statements had substantial indicia of reliability, we conclude the trial court properly excluded them because Perkins' and Winfree's complicity, if true, would not have exonerated Petalino. His point is without merit.

■ Petalino's third point is that the trial court erred in denying his motion for judgment of acquittal on the felony stealing charge. He claims the state did not establish

that the value of the radar detector exceeded $150.

 Section 570.020(1), RSMo.1986, provides that the value of stolen property is "the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime[.]" An owner's opinion of the value of stolen goods is sufficient to submit the issue to a jury. *State v. Roderick,* 828 S.W.2d 729, 732 (Mo.App.1992). Michael Sembroff testified to the property's purchase price, the amount of time between the property's purchase and its theft, and its condition when stolen. This was sufficient. *State v. Beebe,* 736 S.W.2d 525, 526–27 (Mo. App.1987).

 The state concedes to Petalino's fourth point that his postconviction attorney abandoned him. We concur. Petalino filed a *pro se* Rule 29.15 motion on September 2, 1993. On October 5, 1993, the motion court gave Petalino's appointed attorney a 30–day extension within which to file an amended motion. The attorney did not file an amended motion before the trial court denied Petalino's motion on March 21, 1994. Petalino's attorney filed a motion to set aside the court's ruling in which he admitted that he had abandoned Petalino. The attorney certified that Petalino was without fault. The motion court refused to set aside its findings of fact.

Rule 29.15(e) requires an attorney appointed to represent a movant in a Rule 29.15 motion for postconviction relief to review the movant's motion and, if insufficient, to file an amended motion. The Supreme Court has held that when an attorney fails to comply with Rule 29.15(e), the motion court should inquire of the reasons for the counsel's failure to amend. If the failure to file is not caused by the movant's negligence or failure to act, the court must appoint new counsel. *Luleff v. State,* 807 S.W.2d 495, 498 (Mo. banc 1991); *Sanders v. State,* 807 S.W.2d 493, 495 (Mo. banc 1991). We remand this case to the motion court so the trial court can determine whether the failure of Petalino's attorney to file an amended Rule 29.15 motion was Petalino's or the attorney's fault and to determine whether Petalino is entitled to any relief under *Luleff* and *Sanders.*

All concur.