**STATE of Missouri, Plaintiff–Respondent,**

v.

**Charles R. EOFF, Jr., Defendant–Appellant.**

**No. 26047.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 13, 2006.

Motion for Rehearing or Transfer to Supreme Court Denied May 15, 2006.

Application for Transfer Denied
June 30, 2006.

---

1. All statutory references are to RSMo. (2000), unless indicated otherwise.

Irene Karns of Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Kennedy, Asst. Atty. Gen. of Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

Charles R. Eoff, Jr. (Defendant) was charged by amended information with committing three offenses: (1) Count I—the class A felony of robbery in the first degree; (2) Count II—the class C felony of assault in the second degree; and (3) Count III—the unclassified felony of armed criminal action. *See* § 569.020; § 565.060; § 571.015.[1] A jury found Defendant guilty on all counts. Because Defendant was alleged and found to be a persistent offender, the court assessed punishment. *See* § 558.016.3; § 557.036.2(2). The court imposed consecutive sentences of 15 years on Count I, 10 years on Count II and five years on Count III.

In Defendant's only properly-preserved point of error, he contends the trial court erred in refusing to instruct the jury on the lesser-included offense of second degree robbery. Defendant also contends the court committed plain error in refusing to instruct the jury on the lesser-included offense of third degree assault and in admitting testimony of a witness' out-of-court identification of Defendant. We affirm.

■ As Defendant does not challenge the sufficiency of the evidence to sustain his convictions, we consider the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict. *State v. Dillard,* 158 S.W.3d 291, 294 (Mo.App.2005). We disregard all contrary evidence and inferences. *State v. Lawrence,* 64 S.W.3d 346, 348–49 (Mo.App. 2002). Viewed from that perspective, the favorable evidence and inferences supporting the State's case against Defendant are summarized below.

On December 14, 2000, Sandra Duke (Duke) was working the 4:00 p.m. to 9:00 p.m. shift as the attendant at a Gas Plus

1. All references to statutes are to RSMo (2000).

station in Belle, Missouri. The weather was cold, and there was snow on the ground. It was Duke's job to pump gas and collect money from the customers. She kept the money in a wallet that she carried with her at all times. When there were no customers present, Duke counted change or cleaned the station. At 7:15 p.m., Duke was sitting at a desk inside the station counting change when she saw two people walking around the side of the building. The pair entered side-by-side, and Duke saw that they had pantyhose over their faces.

The person in the lead was a tall, white male with a medium build. He had a goatee of sandy-blonde facial hair, and he was wearing a brown winter coat. He was holding a stick in his hand. The stick was a 1 x 2 inch piece of wood about 18 inches long with green paint on it.

The tall man was accompanied by another white male who also had a medium build, but he was about five inches shorter. He had dark, shoulder length hair. He was wearing a quilted, blue and white checkered jacket with a black or navy lining.

The tall man approached Duke and stopped about two feet from her. He was holding the stick by his side. The shorter man, who was standing just behind and to the left side of the tall man, was no more than three feet away. The tall man demanded Duke's wallet, which contained $115. After she handed it over, the tall man hit Duke over the head with the stick. She put her hand on her head, and he struck her with the stick again. The shorter man said, "Let's get out of here." The pair then ran out of the station with the wallet. The entire encounter lasted between five and ten minutes.

Duke ran out to the highway in front of the station and flagged down a man who called the police. Officer Daniel Scott (Of-ficer Scott) responded to the call and arrived at the station five to six minutes later. When he got there, he observed that Duke was bleeding from a wound to her head. There was blood on her face, clothes and the floor. Officer Scott interviewed Duke for 15 minutes and then sent her to the hospital. During that interview, Duke recounted what had happened and described her assailants. Officer Scott relayed Duke's description of the robbers to other officers, and he also recovered the stick used to hit Duke.

When Officer Scott went outside to continue his investigation, he observed two sets of footprints in the snow. These footprints came around the back side of the station, went up the sidewalk beside the building and led right to the front door. Officer Scott took photographs of the footprints. One set of footprints was made by very large boots with the logo "Workload" on the soles. The boot print measured 14-inches long. It was larger than Officer Scott's footprint, and he wore a size 12 shoe. The other footprints were made by smaller shoes that had a "V" imprint on the soles.

While Officer Scott was collecting the footprint evidence, he received a telephone call from a citizen concerning a possible suspect vehicle that was in the area prior to the robbery. The caller described the vehicle as a green Dodge pickup with the word "Sold" written on the back window. This information was relayed to area law enforcement officers.

At around 10:30 p.m., Maries County Deputy Shannon Thompson (Deputy Thompson) was on patrol on Highway 28 when he passed an older, greenish-blue Dodge pickup with the word "Sold" written on the back window. There were three occupants in the vehicle. Deputy Thompson activated his emergency lights

and turned around to follow the pickup. The driver turned onto a city street without signaling, sped up and pulled into a private drive. As soon as the pickup stopped, the driver and one passenger got out of the vehicle and ran away. The other passenger, Jeff Eoff (Eoff), got out and remained by the pickup. After unsuccessfully pursuing the driver, Deputy Thompson returned to the truck and placed Eoff in custody. He then followed the tracks of the passenger who ran away. He apprehended a female named Potobaum, who was hiding in some bushes by a house. She was brought back to the truck and taken into custody. Officer Scott arrived at the scene to stay with the pickup. In the floorboard of the truck, he saw a piece of wood with green paint on it that was similar to the one used in the station robbery.

Deputy Thompson then resumed his search for the driver. Because there was fresh snow on the ground, he was able to follow the driver's tracks to a house inside the Belle city limits. When Deputy Thompson arrived at the house, he was able to look through a window and see a person sitting on the couch inside. Deputy Thompson recognized the person as the driver of the pickup because of the clothing he was wearing. When the suspect answered the door, he was identified as Defendant and taken into custody.

Because Belle does not have a jail, Eoff and Defendant were taken by City Marshal Colin McKinnon (Marshal McKinnon) to city hall. Defendant was placed inside a room in the building, and Eoff was placed in the front lobby area.

While police were investigating the crime, Duke's husband had taken her to the hospital. Her head wound was cleaned, and five staples were used to close the cut. A wooden splinter was removed from Duke's hand, and x-rays were taken to determine whether any bones in the hand were broken. She got home at about 11:30 p.m. Within a few minutes, Duke received a telephone call from police asking if it was possible for her to come to city hall. They had picked up a couple of people and wanted to see if Duke could identify them. Duke arrived at city hall before midnight. When she came inside, she saw Eoff sitting in a chair in the front lobby. Duke immediately recognized Eoff as one of the robbers because of the clothing he was wearing. Duke was asked to wait in a side room while Eoff and Defendant were taken to another room for the show-up. An officer took Duke outside of the building and asked her to look through a window to see if she recognized the two suspects standing inside. Eoff and Defendant were handcuffed together, and they were accompanied by a police officer. Duke had a very clear, head-to-toe view of the suspects through the window. Duke studied them for more than a minute because she wanted to take a good look at them. The two men had on the same clothes they were wearing when they entered the station. Duke identified Eoff and Defendant as the persons who robbed her, based on the clothing they were wearing, Eoff's facial hair, Defendant's long hair, and their heights and weights when they stood together. There was no doubt in Duke's mind that Eoff and Defendant were the two men who robbed and assaulted her. She felt no pressure from the police to make that identification, and she was free to say they weren't the right ones if that had been the case. She identified Eoff and Defendant as the robbers based on her fresh recollection of their appearance at the crime scene a few hours earlier. Aside from not having a pantyhose covering Defendant's face, he looked the same standing in city hall as he did standing in the gas station.

After Duke identified Defendant, he was placed under arrest. Sometime after the show-up, Defendant escaped from police custody by opening a window at city hall and climbing out. Eoff remained in custody, and his boots were seized and retained as evidence. They were a size 14.

Defendant was apprehended by police again on February 26, 2001. At the time Defendant was arrested, he was wearing a pair of size 10½ tennis shoes with a "V" pattern on the sole. His shoes were seized and retained as evidence.

Later laboratory analysis of the stick used in the robbery and the stick found in the pickup showed that both sticks came from the same species of tree. Each stick also had an undercoating of white paint and an outer coating of green paint. Visual, microscopic and spectral analysis revealed that the paint used on each stick was of similar chemical composition and color.

Prior to trial, Defendant filed a motion to suppress any in-court or out-of-court identification of Defendant by Duke. Defendant alleged that the show-up procedure was inherently suggestive and would taint any in-court identification. After a hearing, the trial court denied the motion. The judge concluded that the show-up identification was not overly suggestive.

At trial, Duke's testimony concerning her out-of-court identification of Defendant was admitted without objection. No in-court identification took place because Defendant was much cleaner, and his hair had been cut very short. Without the long hair, Duke was unable to identify Defendant as one of the persons who robbed her. Defendant presented no evidence, but he did argue that he had been misidentified as one of the robbers.

During the instruction conference, the court decided to give Instructions No. 8 and No. 9. These instructions submitted the offenses of robbery in the first degree and assault in the second degree for the jury's consideration. Instruction No. 8 stated:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 14, 2000, in the County of Maries, State of Missouri, the defendant or Jeff Eoff took U.S. currency, which was property in the possession of Sandra Duke, and

Second, that defendant or Jeff Eoff did so for the purpose of withholding it from the owner permanently, and

Third, that defendant or Jeff Eoff in doing so used physical force on or against Sandra Duke for the purpose of preventing resistance to the taking of the property, and

Fourth, that in the course of taking the property, the defendant or Jeff Eoff used or threatened the immediate use of a dangerous instrument against Sandra Duke, and

Fifth, that Jeff Eoff was a participant with defendant in the commission of the offense, then you are instructed that the offense of robbery in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Sixth, that with the purpose of promoting or furthering the commission of that robbery in the first degree, the defendant aided or encouraged Jeff Eoff in committing the offense, then you will find the defendant guilty under Count I of robbery in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions,

you must find the defendant not guilty of that offense.

Instruction No. 9 stated:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the [sic] December 14, 2000, in the County of Maries, State of Missouri, the defendant or Jeff Eoff knowingly caused physical injury to Sandra Duke by means of a dangerous instrument by striking her in the head with a stick then you are instructed that the offense of assault in the second degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Second, that with the purpose of promoting or furthering the commission of that assault in the second degree, the defendant aided or encouraged Jeff Eoff in the commission of the offense

then you will find the defendant guilty under Count II of assault in the second degree. However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

The trial court also decided to give Instruction No. 10, which submitted the offense of armed criminal action.

Defendant tendered Instructions X and Y, which sought to submit the lesser-included offenses of robbery in the second degree and assault in the third degree. Instruction No. X stated:

As to Count I, if you do not find the defendant guilty of robbery in the first degree as submitted in Instruction No....., you must consider whether he is guilty of robbery in the second degree as submitted in this instruction:

First, that on or about December 14, 2000, in the County of Maries, State of Missouri, the defendant or Jeff Eoff took U.S. currency, which was property in the possession of Sandra Duke, and

Second, that defendant or Jeff Eoff did so for the purpose of withholding it from the owner permanently, and

Third, that defendant or Jeff Eoff in doing so used physical force on or against Sandra Duke for the purpose of preventing resistance to the keeping of the property immediately after the taking, and

Fourth, that Jeff Eoff was a participant with defendant in the commission of the offense,

then you are instructed that the offense of robbery in the second degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fifth, that with the purpose of promoting or furthering the commission of that robbery in the second degree, the defendant aided or encouraged Jeff Eoff in committing the offense,

then you will find the defendant guilty under Count I of robbery in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Instruction No. Y stated:

As to Count II, if you do not find the defendant guilty of assault in the second degree as submitted in Instruction No....., you must consider whether he is guilty of assault in the third degree as submitted in this instruction:

First, that on or about the [sic] December 14, 2000, in the County of Maries, State of Missouri, the defendant or Jeff Eoff attempted to cause physical injury to Sandra Duke by striking her in the

head with a stick then you are instructed that the offense of assault in the third degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Second, that with the purpose of promoting or furthering the commission of that assault in the third degree, the defendant aided or encouraged Jeff Eoff in the commission of the offense

then you will find the defendant guilty under Count II of assault in the third degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Instructions X and Y omitted any reference to the use of a dangerous instrument by Eoff during the robbery. The trial court refused to give either instruction.

Defendant was convicted by the jury of committing robbery in the first degree, assault in the second degree and armed criminal action. This appeal followed.

█ In Defendant's first point, he contends the court erred in refusing to submit, via Instruction X, the lesser-included offense of robbery in the second degree. *See* § 569.030. "Instruction on a lesser-included offense is required if the evidence produced at trial, by fact or inference, provides a basis both for the acquittal of the greater offense and the conviction of the lesser offense." *State v. Avery,* 120 S.W.3d 196, 205 (Mo. banc 2003); *see* § 556.046.2. In order for the jury to have a basis to acquit a defendant of the greater offense, there must be evidence from which a reasonable juror could infer that an essential element of the greater offense

has not been established. *State v. Derenzy,* 89 S.W.3d 472, 474 (Mo. banc 2002); *State v. Hostetter,* 126 S.W.3d 831, 835 (Mo.App.2004).

The forcible stealing of property is an essential element of first and second degree robbery. *State v. Lawshea,* 798 S.W.2d 198, 199–200 (Mo.App.1990); *see* § 569.020.1; § 569.030.1. Robbery in the first degree requires proof of the additional element that the defendant or another participant in the crime: (1) caused serious physical injury; (2) was armed with a deadly weapon; (3) used or threatened the immediate use of a dangerous instrument against any person; or (4) displayed or threatened the use of what appeared to be a deadly weapon. *Lawshea,* 798 S.W.2d at 199; § 569.020.1(1)-(4). In the case at bar, Instruction No. 8 hypothesized that Eoff used a dangerous instrument against Duke. Defendant argues there was a basis to acquit him of robbery in the first degree because the jury could have found that the stick used to hit Duke was not a dangerous instrument. We disagree.

█ A "[d]angerous instrument" is defined as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury[.]" § 556.061(9). "Serious physical injury" is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body[.]" § 556.061(28).[2] "Unlike a deadly weapon, a dangerous instrument is not designed for use as a weapon and may have a normal function under ordinary circumstances." *State v. Williams,* 126 S.W.3d 377, 384 (Mo. banc

---

**2.** "Physical injury" is further defined as "physical pain, illness, or any impairment of physical condition[.]" § 556.061(20).

2004). The key consideration is whether, under the circumstances in which this 1 x 2 x 18 piece of wood was used, it was readily capable of causing death or serious physical injury. *Id.; State v. Carpenter,* 72 S.W.3d 281, 283 (Mo.App.2002).

Here, the stick used during the robbery was similar in shape and size to a billy club. Eoff used the stick to bludgeon Duke on the head. Because she tried to ward off the second blow, the stick also struck her hand. Duke received a laceration on her head from the blows. That wound resulted in considerable bleeding and took five staples to close. Doctors were concerned that the second blow might have fractured Duke's hand. More importantly, our inquiry is not solely restricted to an examination of the injuries Duke actually sustained during the robbery. *See State v. Terrell,* 751 S.W.2d 394, 395 (Mo.App.1988) (it is irrelevant whether the victim actually suffered serious physical injury because the pertinent inquiry is what injuries the alleged dangerous instrument is readily capable of causing under the circumstances in which it is used). When used as a bludgeon on someone's head or hand, a 1 x 2 x 18 piece of wood is readily capable of causing broken bones, severe lacerations, eye injuries, loss of teeth, etc. Therefore, the stick Eoff used to strike Duke did constitute a dangerous instrument within the meaning of § 556.061(9), and there was no evidence from which a reasonable juror could have reached any other conclusion. Our holding is consistent with prior decisions finding a number of seemingly innocuous objects to be dangerous instruments under the circumstances in which they were used. *See, e.g., Carpenter,* 72 S.W.3d at 283–84 (handcuffs used to strike an officer's face, causing a long facial laceration, were a dangerous instrument); *State v. Burch,* 939 S.W.2d 525, 530 (Mo.App.1997) (co-defendant's elbow, which he used to strike victim's head and neck, was a dangerous instrument; the blows caused swelling of victim's face and ears, facial bleeding and bruising to his neck); *State v. Williams,* 857 S.W.2d 530, 533 (Mo.App. 1993) (club used to strike victim's face, causing bruises and a broken nose, was a dangerous instrument); *Terrell,* 751 S.W.2d at 395–96 (beer bottle used to strike victim in the head was a dangerous instrument; "[a] beer bottle is ordinarily a harmless object, but when wielded as a bludgeon upon a human being it becomes a dangerous instrument capable of causing serious physical injury or death").

Because there was evidence that Eoff did use a dangerous instrument to rob Duke, the trial court did not err in refusing to give Instruction X, which would have submitted the lesser-included offense of robbery in the second degree for the jury's consideration. *See State v. Humphrey,* 789 S.W.2d 186, 189 (Mo.App.1990). Defendant's first point is denied.

In Defendant's second point, he contends the court committed plain error in refusing to submit Instruction Y. Instruction No. 9 submitted the offense of assault in the second degree and hypothesized that "the defendant or Jeff Eoff knowingly caused physical injury to Sandra Duke by means of a dangerous instrument by striking her in the head with a stick...." Instruction Y would have submitted the lesser-included offense of assault in the third degree for the jury's consideration. *See* § 565.070. This instruction omitted any reference to the use of a dangerous instrument and instead hypothesized that "the defendant or Jeff Eoff attempted to cause physical injury to Sandra Duke by striking her in the head with a stick...." *See* § 565.070.1(1).

Plain error review is discretionary. *See State v. Thurston,* 104 S.W.3d

839, 841 (Mo.App.2003); *State v. Smith,* 33 S.W.3d 648, 652 (Mo.App.2000). A request for plain error review requires us to go through a two-step analysis. *State v. Scurlock,* 998 S.W.2d 578, 586 (Mo.App. 1999). "First, we determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred." *State v. Stanley,* 124 S.W.3d 70, 77 (Mo.App.2004). Only if facially substantial grounds are found to exist do we then move to the second step of this analysis and determine whether a manifest injustice or miscarriage of justice has actually occurred. *Id.* "In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict." *State v. Doolittle,* 896 S.W.2d 27, 29 (Mo. banc 1995).

Defendant argues the court's refusal to give Instruction Y was plain error because the jury could have found that the stick used to strike Duke was not a dangerous instrument. For the reasons already set out in our discussion of Point I, this argument has no merit. Therefore, we decline to review Defendant's second point for plain error because he has failed to facially establish substantial grounds for believing the court so misdirected or failed to instruct the jury that the instructional error affected the jury's verdict. *Id.*

 In Defendant's third point, he contends the court committed plain error in overruling the motion to suppress Duke's out-of-court identification of him and in admitting that identification testimony at trial. Defendant argues the identification procedure was impermissibly suggestive and rendered Duke's identification unreliable. Because a request for plain error review is involved, our first task is to determine whether the asserted claim of error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *Stanley,* 124 S.W.3d at 77. Defendant must demonstrate that the admission of Duke's identification testimony "was not only erroneous, but that the error so substantially impacted upon his rights that manifest injustice or a miscarriage of justice will result if it is left uncorrected." *State v. Chilton,* 119 S.W.3d 176, 178 (Mo. App.2003).

 "Identification testimony is admissible unless the pretrial identification procedure was unnecessarily suggestive *and* the suggestive procedure made the identification unreliable." *State v. Middleton,* 995 S.W.2d 443, 453 (Mo. banc 1999) (emphasis in original). Such testimony is usually admitted because courts rely upon jurors' judgment and good sense in determining the trustworthiness of the identification. *Id.; State v. Weaver,* 912 S.W.2d 499, 521 (Mo. banc 1995). A pretrial identification method is unduly suggestive when the identification results from police procedures or actions, rather than the witness' recall of first-hand observations. *State v. Berry,* 168 S.W.3d 527, 532 (Mo. App.2005); *State v. Glover,* 951 S.W.2d 359, 362 (Mo.App.1997). "Identification testimony will be excluded only when the procedure was so suggestive that it gave rise to a very substantial likelihood of irreparable misidentification." *State v. Hornbuckle,* 769 S.W.2d 89, 93 (Mo. banc 1989). If Defendant fails to demonstrate that the pre-trial identification procedure was impermissibly suggestive, we need not review the reliability of Duke's identification. *State v. Vinson,* 800 S.W.2d 444, 446 (Mo. banc 1990); *State v. Matchett,* 69 S.W.3d 493, 497 (Mo.App.2001); *Olds v. State,* 891 S.W.2d 486, 489–90 (Mo.App. 1994); *State v. Parker,* 890 S.W.2d 312,

319 (Mo.App.1994). In the absence of impermissible suggestiveness, factors relating to reliability of the identification go to the weight, and not the admissibility, of the witness' testimony. *Vinson*, 800 S.W.2d at 446.

Defendant argues that the out-of-court identification should have been excluded from evidence because: (1) Duke was called to city hall to view suspects around midnight; (2) she identified Defendant while he and Eoff were handcuffed together and accompanied by a police officer; and (3) Duke had already recognized Eoff as one of the persons who assaulted her.[3] We reject Defendant's argument because none of the foregoing facts rendered the procedure used in his out-of-court identification impermissibly suggestive.

 Duke was asked to come to city hall shortly after Defendant and Eoff were apprehended, and she arrived there less than five hours after the robbery occurred. If the persons in custody were not the robbers, it was important for police to continue searching for the real culprits. Therefore, it was entirely appropriate under the circumstances for police to conduct a show-up around midnight.[4] "It is settled law in Missouri that the prompt showing of a suspect to the victims of a crime is a proper procedure, justified by the exigencies of the situation; such action may immediately indicate to the officers whether the suspect should be released or held, or whether they should continue the search." *State v. Ballard*, 657 S.W.2d 302, 308 (Mo. App.1983); *see also State v. Hutchinson*,

740 S.W.2d 184, 187 (Mo.App.1987). Moreover, prompt identification of a freshly-apprehended suspect by an eyewitness greatly enhances the reliability of the identification. *See State v. Weaver*, 912 S.W.2d 499, 521 (Mo. banc 1995); *State v. Petalino*, 890 S.W.2d 679, 681–82 (Mo.App.1994); *State v. McCrary*, 652 S.W.2d 220, 222 (Mo.App.1983). Describing the persons Duke was to view as "suspects" did not render the procedure impermissibly suggestive. *See State v. Moore*, 925 S.W.2d 466, 467 (Mo.App.1996); *State v. Clark*, 809 S.W.2d 139, 142 (Mo.App.1991); *State v. Dixon*, 627 S.W.2d 77, 79 (Mo.App.1981). "Some intimation, implication or suggestion that officers suspect a subject presented to witnesses inevitably inheres in every show-up, else why conduct a show-up?" *State v. Johnson*, 628 S.W.2d 904, 907–08 (Mo.App.1982). The fact that Duke viewed Defendant and Eoff handcuffed together in the presence of a police officer did not render the show-up impermissibly suggestive. *See, e.g., State v. Secrease*, 859 S.W.2d 278, 279–80 (Mo.App.1993); *State v. Robinson*, 849 S.W.2d 693, 696 (Mo.App.1993); *Simms v. State*, 568 S.W.2d 801, 803–04 (Mo.App.1978). Finally, we find no merit in Defendant's argument that his identification was somehow tainted because Duke had already recognized Eoff as the person who assaulted her. When Duke arrived at city hall, she saw Eoff sitting in a chair in the front lobby. He was not accompanied by a police officer at the time. She immediately recognized Eoff because of the clothing he

---

3. The hurdle that Defendant must overcome in order to demonstrate plain error in the admission of this evidence is elevated considerably by the fact that Duke was not able to make an in-court identification of Defendant due to the change in his appearance.

4. This procedure is referred to as a show-up because, as soon as the suspect is apprehended, he or she is brought to the witness

for identification. *See State v. Blanchard*, 920 S.W.2d 147, 150 (Mo.App.1996). As long as police do not unduly pressure the witness to make a positive identification, a show-up is not impermissibly suggestive. *Id.; State v. Petalino*, 890 S.W.2d 679, 681–82 (Mo.App. 1994); *State v. McCrary*, 652 S.W.2d 220, 222 (Mo.App.1983).

was wearing. Based on the record before us, it is evident that Duke identified Eoff based on her recall of first-hand observations, rather than police actions or procedures.

In any event, Duke had the opportunity to see Eoff and Defendant during the robbery for between five to ten minutes at a distance of only two to three feet away. The pantyhose on their faces did not prevent Duke from observing that Eoff had a sandy-blonde goatee. Duke got a good look at their clothing, height, hair color and general builds. She took her time looking at the pair before identifying them. She did so based on her fresh recollection of the clothing they were wearing, Eoff's facial hair, Defendant's long hair, and their relative heights and weights when they stood together. She had no doubt these were the men who robbed her, and she felt no pressure from police to make the identification. Accordingly, we hold that the show-up procedure used to identify Defendant was not impermissibly suggestive. *See State v. Weaver,* 912 S.W.2d 499, 520–21 (Mo. banc 1995) (although the witnesses' identification of defendant was based largely on his general build and clothing, the record did not support the conclusion that a very substantial likelihood of irreparable misidentification occurred).

█ Assuming, *arguendo,* that there was any infirmity in Duke's identification of Defendant, the admission of her testimony concerning the out-of-court identification was harmless beyond a reasonable doubt because other evidence admitted at trial sufficiently established that Defendant was involved in the robbery. *See State v. Lawrence,* 64 S.W.3d 346, 355 (Mo.App.2002). When police arrived, they found distinctive footprints left by the robbers in the snow. A citizen also reported seeing a suspicious vehicle in the area before the crime occurred. Defendant and Eoff were riding in a vehicle matching that description when they were seen by an officer and attempted to flee. After Eoff was arrested, his shoes were seized by police. Once Defendant was identified by Duke and arrested, he escaped from custody. His flight and later escape demonstrated consciousness of guilt. *State v. Williams,* 97 S.W.3d 462, 469 (Mo. banc 2003); *State v. Hefflinger,* 101 S.W.3d 296, 301 (Mo.App.2003). Upon Defendant's apprehension and re-arrest two months later, his shoes were seized by police. Later comparison of the crime scene photographs with the footwear seized from Eoff and Defendant revealed that the footprints with the "Workload" logo could have been made by Eoff's boots, and the footprints with the distinctive "V" pattern on the sole could have been made by Defendant's tennis shoes. Therefore, without considering the out-of-court identification testimony, there was still sufficient evidence for the jury to find that Defendant was involved in the robbery.

We conclude Defendant has not met his burden of establishing facially substantial grounds for believing that a manifest injustice or miscarriage of justice might have occurred in his case due to the admission of Duke's testimony concerning her out-of-court identification of Defendant as one of the persons who robbed her. Accordingly, we decline to exercise the discretion afforded us to engage in plain error review of Defendant's third point on appeal. *See State v. Miller,* 139 S.W.3d 632, 638 (Mo. App.2004). Point denied.

The judgment of the trial court is affirmed.

SHRUM, P.J., and GARRISON, J., Concur.