STATE of Missouri, Plaintiff–Respondent,

v.

William S. HAND, Defendant–Appellant.

No. SD 29672.

Missouri Court of Appeals,
Southern District,
Division Two.

March 1, 2010.

---

Kent Denzel, Columbia, for appellant.

Chris Koster, Atty. Gen., Terrence M. Messonnier, Jefferson City, for respondent.

NANCY STEFFEN RAHMEYER, Judge.

William S. Hand ("Appellant") was convicted of the class A felony of first-degree pharmacy robbery, a violation of section 569.025.[1] After he was sentenced to life in prison, Appellant timely filed this appeal claiming there was insufficient evidence to establish beyond a reasonable doubt that he threatened the immediate use of physical force for the purpose of forcing the delivery of the controlled substance and insufficient evidence that he displayed what appeared to be a deadly weapon. Appellant also claims the jury should have been instructed on the lesser-included offense of second-degree pharmacy robbery because there was a basis in evidence to acquit Appellant of first-degree robbery and convict him of second-degree robbery.

### Facts

Appellant was sixty-two years old on the date of the robbery; he entered Walgreen's Pharmacy at approximately 10:00 p.m. After he bought a hypodermic needle, the pharmacy technician asked him if he needed anything else. Appellant responded, "yes, morphine." The technician asked if he had a prescription, to which Appellant responded, "no, he had this and kind of turned and lifted up his shirt" where she could see the handle of a gun. The technician never saw more of the gun than the handle. Appellant made no verbal threats and never pulled the gun out in front of the technician. He apologized for the inconvenience and the technician did not think he wanted to hurt anyone. Appellant said he was tired of life.

The technician put up her hands and walked slowly away from the counter; Appellant did not stop her. She yelled for the pharmacy manager, who was in the back, to come to the counter. She told the pharmacy manager that she "thought he needed to help the gentleman" and told him that Appellant had a gun. She then went to the back of the pharmacy and observed the pharmacy manager talk to Appellant. The pharmacy manager got into the controlled substance cabinet, but then she could not see him anymore. She heard Appellant yelling that he wanted morphine and that he was not "playing around." She heard Appellant ask the pharmacy manager to "tie him off."[2]

The pharmacy manager testified that he was told by the technician that she felt he needed to approach Appellant. The pharmacy manager had noticed Appellant earlier, waiting in line but doing nothing unusual. When the pharmacy manager went to see what was going on, Appellant told him to back off, that the technician was helping him. The pharmacy manager thought Appellant heard the technician say that Appellant had a gun. Appellant demanded morphine; the pharmacy manager could see just the "top" of the gun. The pharmacy manager got morphine from a locked cabinet and gave it to Appellant. It was a 500–milliliter bottle of liquid morphine.[3] Appellant tried to draw the drug into the syringe and needle he had just purchased to inject himself; he asked the pharmacy manager to tie him off but the manager told Appellant he was on his own as the pharmacy manager had nothing to tie him with.

1. All references to statutes are to RSMo 2000, unless otherwise specified.

2. The technician understood this to mean placing a tourniquet on the man so he could access a vein.

3. It was meant to be taken orally.

After Appellant tried to inject himself a couple of times, he started to bleed and went to a chair in the corner of the pharmacy area; he took off his shoe and sock and tried to inject himself in the foot or leg. He left the bottle of morphine on the counter; after a few tries at injecting himself, he came back for the bottle and returned to the chairs to drink from it. Appellant asked for more and the pharmacy manager gave him a second bottle that had only about an ounce of liquid remaining. Appellant consumed a total of 1060 milligrams of liquid morphine from the two bottles and asked for more, but the pharmacy manager said that was all. Appellant demanded Dilaudid, another controlled substance, but the pharmacy manager did not give him any.

The pharmacy manager conducted a transaction with another customer while all this was going on. He also pressed two silent alarms in the pharmacy and picked up the phone when the police called while Appellant was "busy doing his thing." He felt threatened by the gun and testified that he only gave Appellant the morphine because he had the gun.

All of the technicians waited in the back of the pharmacy until the police arrived. The police motioned for the technicians to leave and all left through a back door along with the overnight pharmacist. Appellant asked where the technicians were going and stated that he did not have all the drugs that he needed. The pharmacy manager also left after he spoke to the police, yet Appellant made no threats. After he left, Appellant took the gun out and laid it on the counter.

The assistant store manager on duty that night approached Appellant when he was standing at the pharmacy counter. Appellant had a syringe in his hand and threatened to stab the assistant store manager with the syringe if he did not step back. The assistant store manager exited through the stockroom and went to his office to call 9–1–1.

The police arrived, set up a perimeter, and told Appellant to get on the ground. Appellant was cooperative and handcuffed, though his movements were slow and lethargic. Appellant led the police to the gun, which was left in two pieces on a shelf in one of the aisles. Although Appellant called it a toy, an officer testified that it was "an airsoft type of gun," designed to shoot plastic pellets. At a distance of several feet, the gun would look like a semiautomatic designed to fire bullets. Appellant was taken to the hospital and admitted in critical condition; his stomach was pumped. He had consumed 5,210 milligrams of morphine, well above the lethal amount. At the penalty phase, there was testimony that Appellant had stabbed himself in the wrist with a screwdriver or other similar instrument a couple of months before the robbery. Appellant had been sick and was in the hospital; he left the hospital against medical advice the morning of the robbery.

Appellant testified that he had been convicted of several prior offenses and that he has had drug and alcohol problems since he was nineteen years old. His mother abused him and he had been sexually abused. He suffered from emphysema and acute pancreatitis as well as a deteriorating mental state. He did not remember going to the hospital on the day before the Walgreen's incident, but remembered getting out on the morning of the robbery. He had no recollection of the events for which he was on trial, but he thought he went there to end his life.

### Point One: Sufficiency of the Evidence

Appellant argues in his first point that there was insufficient evidence to convict him of robbery in the first degree because the evidence was insufficient to establish

beyond a reasonable doubt that Appellant threatened the immediate use of physical force on or against anyone for the purpose of forcing the pharmacy manager to deliver up the controlled substance, in that Appellant did not display what appeared to be a deadly weapon to the pharmacy manager and the manager did not know that Appellant had displayed what appeared to be a deadly weapon to the technician. There is no merit to Appellant's contention.

A person commits the crime of pharmacy robbery in the first degree "when he forcibly steals any controlled substance from a pharmacy and in the course thereof he, or another participant in the crime: ... (4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument." Section 569.025.1(4). Section 569.025.1(4) is concerned with the fear generated by an object used to give the appearance of being either a deadly weapon or a dangerous instrument, even though the object may actually be neither. *Harling v. State*, 172 S.W.3d 889, 893 (Mo.App. S.D.2005). Section 569.010 states the following:

■ As used in this chapter the following terms mean:

(1) **"Forcibly steals"**, a person "forcibly steals", and thereby commits robbery, when, in the course of stealing, as defined in section 570.030, RSMo, he uses or threatens the immediate use of physical force upon another person for the purpose of:

(a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

(b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft;

Section 569.010(1). For the purposes of first-degree robbery, it does not matter whether the actor actually had a weapon, as long as he appeared to have a weapon. *State v. Woodson*, 140 S.W.3d 621, 628 (Mo.App. S.D.2004).

■ Appellant is essentially arguing that to be convicted of first-degree pharmacy robbery he had to have directly threatened or displayed a deadly weapon to the person who gave him the drugs. Appellant ignores the evidence that reflects that the pharmacy manager was told by the technician that Appellant had a gun, that the pharmacy manager saw the top of a gun, and that the pharmacy manager testified he would not have given Appellant the drugs had he not thought Appellant had a gun. The display of the weapon must occur in the course of the offense. *State v. Gray*, 895 S.W.2d 241, 244 (Mo. App. S.D.1995). The entire offense occurred from the time Appellant entered the store and spoke with the technician until he received the controlled substance. Furthermore, the threat need not be explicit but can be a combination of words and deeds. *State v. Rounds*, 796 S.W.2d 84, 86 (Mo.App. E.D.1990). Sufficient evidence exists that Appellant threatened the immediate use of physical force against both the technician and the pharmacy manager when Appellant said that he was not playing around, when he pulled open his shirt and showed the top of a gun, when the pharmacy manager saw the gun on Appellant, and when the pharmacy manager was told that Appellant had a gun. All of these facts provide sufficient evidence that Appellant threatened the use of physical force and displayed what appeared to be a deadly weapon. Point I is denied.

### Point Two:  Instruction For Lesser–Included Offense

■ Appellant's second point claims trial court error in refusing an instruction for

the lesser-included offense of second-degree pharmacy robbery because there was evidence that the gun was a toy, thus, the jury could have found that Appellant did not display what appeared to be a deadly weapon or dangerous instrument. If the jury found that Appellant did not display what appeared to be a deadly weapon or dangerous instrument, the evidence would have satisfied the statutory element of "forcibly steals" in the offense of second-degree pharmacy robbery. The proffered instruction omitted a paragraph, which stated: "that in the course of obtaining the controlled substance, the defendant displayed or threatened the use of what appeared to be a deadly weapon or dangerous weapon."

■ A defendant is entitled to an instruction on any theory that the evidence tends to establish. *State v. Westfall*, 75 S.W.3d 278, 280 (Mo. banc 2002). Even if the evidence tends to show differing conclusions, the defendant is entitled to an instruction. *Id.* The failure of the trial court to instruct on all lesser-included offenses supported by the evidence is error. *State v. Derenzy*, 89 S.W.3d 472, 474 (Mo. banc 2002). "A lesser-included offense is an offense established by proof of the same or less than all the facts required to establish the commission of the charged offense." *State v. Whiteley*, 184 S.W.3d 620, 623 (Mo.App. S.D.2006). "An offense is a lesser-included offense if it is impossible to commit the charged offense without necessarily committing the lesser." *Id.* The evidence is viewed in the light most favorable to the defendant. *State v. Edwards*, 980 S.W.2d 75, 76 (Mo.App. E.D. 1998).

Appellant maintains that though the jury could have found that the pellet gun appeared to be real, it did not mandate such a finding. Appellant then argues that if the "instrument" did not reasonably appear to be deadly or dangerous based on the mere glimpse of the handle, the jury could have found that there was force used in the sense that Appellant *acted* as though he had a deadly weapon, thereby accomplishing a threat of force and making Appellant guilty of second-degree pharmacy robbery.

■ The State counters that the facts of this case parallel those of *State v. Humphrey*, 789 S.W.2d 186 (Mo.App. E.D.1990). In *Humphrey*, the defendant had his hand in his pocket and the witnesses merely saw something vague protruding from under the material of his jacket pocket. *Id.* at 188–89. Although the defendant argued that the trial court erred in failing to instruct the jury on the lesser-included offense of robbery in the second degree, the appellate court found the facts did not give rise to a reasonable basis for the jury to find that the defendant did not display or threaten to use a deadly weapon. *Id.* at 189. When there is no evidence indicating that the robbery was committed by some means other than the use of a deadly weapon or dangerous instrument, a lesser-included instruction is not required. *State v. Williams*, 857 S.W.2d 530, 532–33 (Mo. App. S.D.1993). Likewise, in *State v. Eoff*, 193 S.W.3d 366 (Mo.App. S.D.2006), this Court found that when a stick or club was used in the course of a robbery as a bludgeon, that no reasonable jury could have found that, under the circumstances in which it was used, the stick did not qualify as a dangerous instrument. *Id.* at 374.

In this case, all of the evidence indicated that the pellet gun looked like a real gun. There was no basis in the evidence for a rational juror to find that Appellant did not display or threaten the use of what appeared to be a deadly weapon. The only force that could be used to support robbery in the second degree was the threat of a deadly weapon; therefore, the lesser-

included instruction was not required. Point II is denied.

The conviction is affirmed.

SCOTT, C.J., LYNCH, P.J., concur.